[Crim. No. 22118. First Dist., Div. Two. Feb. 2, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS HICKS, Defendant and Appellant.

**COUNSEL**

Alan M. Caplan, under appointment by the Court of Appeal, and Bushnell, Caplan, Fielding & Rudy for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BARNETT, J.*—Appellant was charged, in an information filed June 2, 1980, by the District Attorney for the City and County of San Francisco, with a violation of Penal Code sections 664 and 211 (count one), attempted robbery; with a violation of Penal Code section 245, subdivision (a), assault with a deadly weapon (count two); and, as a convicted felon, possession of a firearm in violation of Penal Code section 12021 (count three). It was further alleged that during the commission of the offenses in counts one and two appellant used a firearm within the meaning of Penal Code section 12022.5 and that he had a prior felony conviction within the meaning of Penal Code section 667.5, subdivision (b).

Hicks pleaded not guilty to the offenses charged, denied the firearm use and the prior felony conviction allegations.

On October 6, 1980, at the inception of the trial, Hicks admitted his prior felony convictions. Count two and count three were later amended to charge only that the appellant exhibited a firearm in a threatening manner in violation of Penal Code section 417, a misdemeanor.

Hicks was found by a jury to be guilty on all counts of the amended information. He was sentenced on November 7, 1980, to prison as follows: to the upper term of three years for count one, with two years added for the use of a firearm; to six months in the county jail on count two, with the term stayed; and to two years in prison on count three, with the term stayed.

Hicks has appealed from his conviction and sentence.

---

*Assigned by the Chairperson of the Judicial Council.

FACTS:

Jose San Miguel[1] has operated a small neighborhood grocery store on 22d and Hampshire Street in San Francisco for the past 35 years. He speaks Spanish fluently and some English. He had been robbed several times in the past. Once he shot and killed a robber who was holding a knife to his throat. He had weapons in his store, usually carrying a .38 calibre gun in his waistband and he kept a .22 hidden under the counter by the cash register.

On May 10, 1980, about 7 p.m., two well-dressed black men entered the store. One, about 30 years of age, was later identified as a Frank Smith and the other was the appellant who was 50 years old. Smith asked for Geritol and was told by San Miguel that he did not carry it. He suggested that they go to another corner store, but both men continued to walk around the store for 10 to 15 minutes. San Miguel was suspicious of the men.

Eventually, a can of beer was obtained from the cooler in the rear of the store and placed on the counter. Appellant threw a dollar bill on the counter and at the same time San Miguel noticed that appellant had pointed a German Luger at him stating, "Get the money." Instead of complying, San Miguel reached under the counter for his gun and shot appellant two or three times. Wounded, appellant fell to the floor and pleaded not to be shot any more.

At the shooting the younger man Smith ran from the store. A police vehicle with Officers Hance and Murphy happened to be adjacent to the corner. They heard the shots and when they observed Smith running from the store Officer Hance apprehended him at gun point, wrestled him to the ground and handcuffed him. Officer Hance noted that a vehicle containing two black men, one in the front and one in the back, had been double parked and, at the shots, made a fast getaway. He radioed an APB but the vehicle was not found until a few days later. It was owned by appellant.

Upon entering the store Officer Murphy observed appellant lying on the floor on his back. Officer Murphy asked San Miguel what had happened. He was told that appellant had tried to rob him. At that point appellant said, "He's right. I'm shot. I was trying to rob him. Please get

---

[1]The information charges offenses against SAMUEL MIGUEL.

the doctor—get me a doctor." San Miguel showed Officer Murphy a German Luger which he stated he had picked up from the floor and placed on the counter.

Appellant contends that on the day in question he drove to San Francisco from his home in Daly City and met an acquaintance named Smith. He had a half pint of brandy which he drank, sharing it with Smith and two strangers who had joined the conversation. One of the men wanted to be driven to Potrero Hill and had offered appellant $10. Having nothing better to do he agreed. Appellant was not familiar with the area and stopped at San Miguel's store to purchase another half pint of Korbel brandy. Smith went in with him as his mother-in-law needed some Geritol. He left the keys in his automobile with the two strangers.

Appellant says that, when he was advised by San Miguel that he didn't have the brandy or the Geritol, he then went to the back and selected a can of Olympia beer. He paid for it with a dollar bill which he extracted from his checkbook and testified that his hands were always in front of him when he was shot by San Miguel without provocation.

Appellant denies possessing or owning the Luger. His injuries required surgery. Appellant was a diabetic and had lost a leg in Korea. He was wearing a prosthesis at the time which was not noticed by San Miguel or the police.

An investigator hired by appellant, David Packard, went to see San Miguel and to question him about his weapons. In a taped conversation San Miguel admitted that he had four weapons and became hostile to Packard. This tape was played in full before the jury.

Appellant vigorously asserts that he was the victim of a trigger-happy store owner. He denies possessing or having any firearm. No evidence was presented at the trial concerning ownership of the Luger other than that it was unregistered. Smith was not called on behalf of the defense, appellant testifying that he couldn't locate him or the other two strangers.

ISSUES:

1. SUFFICIENCY OF THE EVIDENCE THAT APPELLANT ATTEMPTED A ROBBERY OR POSSESSED A FIREARM.

2. Impropriety of the Admission Into Evidence of Police Officer Murphy's Testimony Regarding the Statement Allegely Made by Defendant.

3. Correctness of the Imposed Sentence.

### Discussion:

*Sufficiency of evidence.*

It is contended by appellant that there was insufficient evidence to support any convictions, based upon the criteria of *People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738]; *People* v. *Redmond* (1969) 71 Cal.2d 745, 755-756 [79 Cal.Rptr. 529, 457 P.2d 321].

When the sufficiency of the evidence to support a judgment is challenged upon appeal, this court must view the evidence in a light most favorable to the respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. (*People* v. *Grimble* (1981) 116 Cal.App.3d 678, 685-686 [172 Cal.Rptr. 362].) The weight to be given testimony is for the trier of fact to determine and the testimony may not be reweighed by the reviewing court. (*People* v. *Williams* (1970) 10 Cal.App.3d 638 [89 Cal.Rptr. 143].)

Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury. *People* v. *Grimble, supra,* at page 686.

As stated in *People* v. *Hillery* (1965) 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382], "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." The cited case of *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781] does not change the California substantial evidence rule. (*People* v. *Grimble, supra,* 116 Cal.App.3d at p. 686.)

 Here there was substantial evidence from which the jury determined that appellant was guilty of the offenses as charged. He and a younger acquaintance entered an unfamiliar neighborhood grocery store for the alleged purpose of buying some Geritol and a specific brand of brandy. After being advised that the shop did not have either item the two men did not leave the store. After 10 or 15 minutes appellant decided to get a can of Olympia beer. Appellant's automobile had been left with the keys in it and with the two strangers as passengers.

Hearing gunshots two police officers were upon the scene within a minute or two as their vehicle happened to be at the intersection. Smith was seen running from the building and Officer Nance captured him at gun point, after a struggle. Appellant's vehicle was driven away rapidly and, in spite of an immediate radio call by Officer Nance, it was recovered abandoned a few days later.

Officer Murphy had entered the store and observed appellant lying on the floor on his back. Appellant either made the statement testified to by Officer Murphy or he failed to deny the accusation of San Miguel. Nor did he deny the statement that the Luger was the one appellant had held. Appellant was conscious and in command of his faculties.

 It has long been held that where a statement accusing a defendant of a crime has been made and he has remained silent or given an equivocal or evasive reply, the evidence of the statement and of his conduct is admissible. (19 Cal.Jur.3d, Criminal Law, § 1119, pp. 262, 263.)

*Impropriety of admission into evidence of Officer Murphy's testimony regarding defendant's statement.*

Appellant takes the position that because of the accusation and the fact that he was lying on the floor wounded, there was probable cause for the officer to make an arrest. Therefore, he was entitled to a *Miranda* warning before his statement would be admissible. He relies upon *In re James M.* (1977) 72 Cal.App.3d 133, 137 [139 Cal.Rptr. 902]; *People* v. *Wright* (1969) 273 Cal.App.2d 325, 333 [78 Cal.Rptr. 75]; and *People* v. *Ceccone* (1968) 260 Cal.App.2d 886, 892-893 [67 Cal.Rptr. 499].

These cases relate to a custodial situation even though an arrest had not been made. The essence is whether or not the person is in custody, not whether the investigation has focused upon him. (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) When Officer Murphy entered the grocery store he was not an investigating officer. He was responding to the sound of gunshots and when he observed Hicks lying wounded on the floor he merely inquired as to what had happened. He was not either the investigating officer or the arresting officer. He did not utter any words which could be interpreted as placing the appellant in custody. Nor did he act as though appellant was in a custodial situation. An ambulance was called and he waited for it.

In *People* v. *Paton* (1967) 255 Cal.App.2d 347 [62 Cal.Rptr. 865] an officer arrived at the home of a lady defendant who had previously called the sheriff's office stating that she had stabbed her husband. When the deputy arrived he pushed the door open, walked over to the victim who was lying on a couch and asked, "What happened?" The defendant made a statement that she had stabbed her husband. It was held that defendant's statement had been made before any investigation had begun and to an officer who had not known anything about the crime and so was properly admitted. (See Annot. (1970) 31 A.L.R.3d 565, 676-680.)

In *State* v. *Overstreet* (Mo. 1977) 551 S.W.2d 621, defendant was initially questioned at a hospital as a victim of a gunshot wound. He was not a suspect and was not in custody. The court held, therefore, that he was not entitled to be warned of his federal constitutional rights.

█ It is clear from the evidence that at the time the alleged statement was made, appellant was not in custody nor even a suspect. As stated, upon entering the store Officer Murphy saw the appellant lying on the floor wounded, his feet pointing towards the door, his head towards the rear of the store. Murphy spoke to the store owner and asked what had happened. He did not address appellant. He was told that appellant had tried to rob the store owner. Officer Murphy had neither spoken to nor attempted to interrogate appellant who was thrashing about on the floor. The statement from Hicks to the effect, "He's right. I'm shot. I was trying to rob him. Please get the doctor" was a voluntary statement. Appellant denied making that statement. Thus, whether he did or not was a question of fact for the jury. However, it was prop-

erly admissible. Defendant was not in custody at the time merely because a police officer had entered the store and inquired as to what had happened.

*Correctness of imposed sentence.*

Appellant's assertion that the trial judge improperly sentenced him to prison for attempted robbery is without foundation. The exact issue was before the court in *People* v. *Superior Court (Duran)* (1978) 84 Cal. App.3d 480 [148 Cal.Rptr. 698]. It was held that Penal Code section 664 has no application in an attempted robbery situation because of Penal Code section 213 which states that, "Notwithstanding Section 664, attempted robbery is punishable by imprisonment in the state prison." Punishment for attempted robbery is, therefore, prescribed by Penal Code section 18. Sentence may be imposed for a term of sixteen months, two or three years. The trial judge gave explicit reasons for the sentence here. It was appropriate and correct.

The judgment of conviction is hereby affirmed.

Miller, Acting P. J., and Taylor, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1982.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.