Filed 6/23/14  P. v. Gallagher CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>KEITH BRIAN GALLAGHER,<br><br>  Defendant and Appellant. | F065703<br><br>(Super. Ct. No. CRM021739)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Donald E. Shaver, Judge.*

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Retired judge of the Stanislaus Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

A jury found defendant Keith Brian Gallagher guilty of two counts of felony stalking and three counts of misdemeanor vandalism. He appeals, contending the evidence is insufficient to support his convictions for felony stalking. He argues the record is devoid of credible evidence that his letters or his graffiti constituted a credible threat with the intent to place the victims in reasonable fear. Defendant also asserts the trial court erred in admitting evidence of his inquiry regarding eligibility to own a firearm because it was irrelevant and prejudicial. We disagree and affirm.

## PROCEDURAL HISTORY

Defendant was convicted of two counts of felony stalking (Pen. Code,[1] § 646.9, subd. (a); counts 1 & 2) and three counts of misdemeanor vandalism (§ 594, subd. (a); counts 3-5). His subsequent motion for new trial and petition for an order disclosing personal juror information were denied. Thereafter, on August 23, 2012, defendant was placed on formal felony probation for a period of five years, conditioned upon the following: he was to serve 365 days in county jail on count 1; a concurrent 365-day sentence was to be served as to count 2; and 30-day consecutive sentences were imposed on counts 3 through 5.

## BRIEF FACTUAL SUMMARY

A detailed summary of the facts is not necessary in light of the issues on appeal. Where appropriate, the testimony offered and evidence adduced at trial will be referenced with specificity in this court's discussion.

In October 2011, Sandra Bushman, defendant's ex-wife and the mother of his sons, sought an order from the court granting her full legal and physical custody of their 14-year-old twin boys. Following their divorce, Bushman and defendant had equally shared legal and physical custody of the boys. Over the course of the previous two years, Bushman observed that defendant was having difficulty with day-to-day life. She

---

[1]All further references are to the Penal Code unless otherwise indicated.

2.

believed him to be "very unstable." In particular, on October 26, 2011, defendant left a voice mail message for their sons wherein defendant stated he would no longer be a part of their lives, that he was going to be getting rid of his things, and he wanted to know what items they wanted. He also told them they would need to stay with their mom for the rest of their lives.

At the November 2011 emergency hearing held in response to Bushman's petition seeking full legal and physical custody, defendant did not appear. Commissioner Gerald Corman granted Bushman temporary full custody of the boys and set the matter for further proceedings, including mediation.

Thereafter, defendant filed a complaint with the superior court against Commissioner Corman. Following an investigation by the presiding judge of the Merced Superior Court, it was determined the commissioner acted appropriately and defendant was advised of that finding. There followed the behavior resulting in the charges filed against defendant.

Commissioner Corman and his wife Dr. Christine McFadden live in Merced with their five-year-old twin daughters. The couple began receiving unsigned letters and articles at their residence in late December 2011. Anonymously sent letters or articles were delivered via United States Postal Service mail until March 2012. The day after the first letter was received, a similar letter was received at McFadden's veterinary offices.

Corman and McFadden found the anonymous communications to be threatening. McFadden was very frightened. The couple had discussed canceling their holiday plans and leaving the Merced area. Corman believed defendant was behind the letters and articles. Additionally, during this same period, a flyer was hand delivered and placed in the Corman/McFadden mailbox. The couple also considered the flyer to be threatening, particularly because it meant defendant likely delivered it himself.

After the first letter was delivered, Corman asked that the custody matter involving defendant be reassigned to another judge. The matter was reassigned before any additional proceedings were held in the custody matter.

3.

In late February 2011, pink chalk graffiti was found in the Merced courthouse parking lot that read "FUCK CORMAN." Corman believed this indicated defendant "was taking his threats a step further." Shortly thereafter, McFadden called Corman while he was out of town to report graffiti in their driveway. Orange spray paint was used to leave the message "Corman Fucks Kids." Similar orange spray-painted graffiti was found on a neighbor's fence and in a nearby intersection. McFadden was panicked and distressed. Corman was extremely concerned.

The last anonymous communication—a flyer accusing Corman and others in the Merced legal community of sexual misdeeds—was received shortly thereafter. This flyer was also apparently hand delivered to a number of other business or legal professionals in the Merced area. Corman again believed defendant's anger and threats were accelerating. Corman thought he and his wife were in actual danger. Increased security measures were taken to ensure the safety of their family and home.

On March 4, 2012, law enforcement officers served a search warrant at defendant's apartment. A number of items connecting defendant to the communications directed to Corman and McFadden were found, including: articles, preprinted address labels, and an index card bearing identifying information concerning McFadden and Corman. Also found were latex gloves, a letter from the California Department of Justice concerning defendant's eligibility to purchase a firearm, and a handwritten list of firearms. A search of defendant's vehicle revealed orange paint transfers on the steering wheel, gear shift and driver's side door handle. A container of sidewalk chalk was found in the trunk; it was missing a piece of pink chalk.

Defendant testified in his own defense. He intended his communications directed to McFadden to convey his pain and "profound sense of loss" concerning the custody issue involving his sons. He thought she would be sympathetic.[2] Defendant did not

---

[2]Four of McFadden's children were murdered by an ex-husband in 2002.

4.

intend to convey a threat.  He denied hand delivering a flyer to the Corman/McFadden residence mailbox.

Defendant regretted some of the language used in his communications because it was juvenile, cowardly, and insulting.  Defendant did not own a gun and denied attempting to obtain a firearm.

## DISCUSSION

### I.      Sufficiency of the Evidence

Defendant contends his convictions for felony stalking must be reversed because there is insufficient evidence of his specific intent to threaten Corman and McFadden. We do not agree.

#### A.      Applicable Legal Standards

In assessing a claim of insufficiency of the evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value upon which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.  It is the jury that must be convinced of a defendant's guilt beyond a reasonable doubt.  If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.  (*People v. Watkins* (2012) 55 Cal.4th 999, 1019-1020; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317–320; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts.  We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  If the verdict is supported by substantial evidence, a reviewing court must

5.

accord due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact finder. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The testimony of a single witness—unless physically impossible or inherently improbable—is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An appellate court must accept logical inferences the jury might have drawn from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Before the judgment of the trial court can be set aside for insufficiency of the evidence, "it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429; see *People v. Conners* (2008) 168 Cal.App.4th 443, 453.)

## B.    Analysis

Subdivision (a) of section 646.9 provides as follows:

> "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking …."

Subdivision (g) defines "credible threat" for purposes of the stalking statute. It provides, in pertinent part:

> "a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the defendant had the intent to actually carry out the threat. … Constitutionally protected activity is not included within the meaning of 'credible threat.'"

"[I]n determining whether a threat occurred, the entire factual context, including the surrounding events and the reaction of the listeners, must be considered." (*People v. Falck* (1997) 52 Cal.App.4th 287, 298.)

First, defendant asserts that because his course of conduct varied between sending articles on subjects such as parental alienation and letters asserting allegations and employing offensive language, that conduct, taken in totality, did not establish a specific intent to place Corman or McFadden in fear for their safety. The statute specifically defines "course of conduct." Subdivision (f) of section 646.9 explains course of conduct to mean "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose."

Here, the evidence is amply sufficient to establish a course of conduct. It began when defendant mailed a letter addressed to McFadden at her residence on or about December 20, 2011, alleging her husband, Corman, "destroys loving and committed families" and had committed acts of judicial misconduct. The letter concluded that "the information will get out and hopefully your twins will eventually have a better understanding on what a scumbag their dad is." There followed a series of additional mailings addressed to either McFadden or Corman at their residence. Those included various articles, and more letters, as well as a flyer hand delivered to the mailbox until February 2012. In March of that year, defendant used pink sidewalk chalk to express his continued displeasure by scrawling "FUCK CORMAN" in three separate locations on the grounds of the Merced courthouse. Finally, just prior to his arrest in March 2011, defendant spray painted "Corman Fucks Kids" in bright orange paint on the driveway of the Corman/McFadden residence. Similar sentiments were found on a neighbor's fence and in a nearby intersection.

Taken in their totality, even excluding the articles, defendant's actions are clearly sufficient to establish a course of conduct for purposes of the stalking statute. (*People v. Falck*, *supra*, 52 Cal.App.4th at p. 298.)

Next, defendant maintains that none of his statements "implicated the victims' 'safety' or reasonably implied an intent to violate their safety." A direct threat is not required for a conviction. And, because intent is inherently difficult to prove by direct evidence, the trier of fact can properly infer intent from the defendant's conduct and all the surrounding circumstances. (*People v. Edwards* (1992) 8 Cal.App.4th 1092, 1099; see also *People v. Falck*, *supra*, 52 Cal.App.4th at p. 299.)

Here, defendant testified he had no intention of causing fear in his victims, nor would he have harmed Corman, McFadden, or their children. Nevertheless, intent can be inferred from circumstantial evidence (*People v. Falck*, *supra*, 52 Cal.App.4th at p. 299), and the jury was certainly not required to find defendant's testimony credible.

Even after Corman recused himself from the family law proceedings involving defendant and his ex-wife, defendant continued sending unsigned letters and documents to the Corman/McFadden residence. Defendant was aware of McFadden's past, in particular that her four children were murdered by an ex-husband. He alluded to that knowledge by referencing her interviews with Oprah. And, defendant's correspondence expressly referenced Corman and McFadden's twins. McFadden was concerned defendant was identifying with the man who murdered her other four children.

Defendant's letters can readily be understood to exhibit hostility toward both Corman and McFadden. Defendant's conduct escalated over the course of about three months and culminated with his traveling to the Corman/McFadden residence at night in order to spray paint obscenities on their driveway. Moreover, both Corman and McFadden testified they feared for their safety and the safety of their children, from the first letter through to the last vandalism incident. That fear included considering cancelling planned holiday events and leaving the Merced area. McFadden also began taking prescription medication as a result of defendant's conduct. And the couple increased the security measures at their home in response to defendant's conduct. Based upon this evidence, it was reasonable for a jury to infer that defendant intended to cause Corman and McFadden to fear for their safety and the safety of their children.

8.

Defendant's contention his conduct and statements evidence only his "emotional reaction to the loss of visitation with his children and a misdirected response to his perceived mistreatment by the courts" was rejected by the jury. His argument on appeal amounts to a request to reweigh the evidence against him and find in his favor. However, that is not our task. We have, instead, reviewed the evidence in the light most favorable to the judgment or verdict and find it sufficient to support defendant's convictions for felony stalking.

## II. Firearms Eligibility Evidence

Defendant maintains the trial court erred in admitting prejudicial and irrelevant evidence regarding his eligibility to own a firearm.

### A. Applicable Legal Standards

Evidence Code section 352 provides as follows:

> "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

On appeal, a reviewing court applies an abuse of discretion standard when evaluating whether a trial court erred in assessing whether the probative value of the questioned evidence is substantially outweighed by the probability of undue prejudice. Unless the trial court's determination was arbitrary, capricious, or patently absurd, its holding will be upheld. (*People v. Thomas* (2012) 53 Cal.4th 771, 806.)

### B. The Trial Court's Ruling Below

Defendant filed a motion in limine seeking to exclude the firearms eligibility notification letter and the handwritten list of Smith and Wesson firearms found during the search of his apartment. The motion was argued June 12, 2012. The trial court ruled as follows:

> "As to [exhibits] 110 and 111, then, it will be—the question is not whether or not it's true that he was trying to obtain a gun. That's what the jury would decide. The question is whether or not this would be relevant circumstantial evidence of his intent to obtain a gun, which would be

circumstantial evidence on whether or not he was just blowing off steam or he was intending to make threats, intending to follow through on some criminal act. And the degree of connection is always the question, as [defense counsel] pointed out, whether or not there's sufficient probative value in that compared to the prejudicial value. Of course, anytime there's a firearm involved or a handgun, there's going to be a certain amount of unfair prejudicial value just because some people tend to react that way.

"In weighing the two in this case, I think that there is sufficient probative value to justify this sort of evidence. It will be up to the attorneys, of course, to deal with any speculation that they believe is unfair. But I believe the jury could use this as circumstantial evidence on the issue of whether or not he was really making threats or he was just blowing off steam. So as to 110 and 111, I'll deny the motion as to that."

**C.      Analysis**

First, defendant argues his eligibility to own a firearm is irrelevant to establish a credible threat because neither Corman nor McFadden were aware of the documents found in his apartment, and none of his communications to Corman and McFadden reference a firearm.

"[A]ll relevant evidence is admissible." (Evid. Code, § 351.) "Relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.'" (*People v. Jablonski* (2006) 37 Cal.4th 774, 821, quoting Evid. Code, § 210.)

The trial court did not abuse its discretion in finding that a California Department of Justice notification regarding defendant's eligibility to own a firearm and defendant's handwritten notes regarding firearm makes, models, and prices were admissible. As the trial court noted, this evidence could prove or disprove a disputed fact of consequence to this action, to wit: whether defendant's conduct amounted to, as he argued, "'blowing off steam,'" or a credible threat. Nothing about the court's finding is arbitrary, capricious, or patently absurd. The documents were found in a search of defendant's apartment shortly after the paint graffiti incident at the Corman/McFadden residence. Also found during that search were documents and items from which it can be inferred defendant intended to continue contacting Corman or McFadden had he not been interrupted by law

10.

enforcement. For example, detectives found prepared address labels to "Christine McFadden," and an index card bearing her name, address, and cell phone number in the same bedroom these documents were found.

Next, defendant argues this evidence was "highly prejudicial" and hence should have been excluded. The trial court expressly acknowledged that evidence concerning a firearm involves "a certain amount of unfair prejudicial value," yet ultimately determined the aforementioned evidence was more probative than prejudicial. As noted above, this evidence was probative to a determination by the jury regarding a credible threat and defendant's defense, characterized as his "'blowing off steam.'" The value of the evidence was not outweighed by "substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The "undue prejudice" referred to in Evidence Code section 352 "is not synonymous with 'damaging,' but refers instead to evidence that '"uniquely tends to evoke an emotional bias against defendant"' without regard to its relevance on material issues." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) Here, evidence defendant inquired into his ability to legally obtain and own a firearm was not the type of evidence that would tend to "'"evoke an emotional bias"'" against him. (*Ibid.*) The court did not abuse its discretion.

But even if we were to conclude the court erred in admitting evidence relating to defendant's eligibility to own a firearm, the error was harmless. The California Supreme Court has held the application of ordinary rules of evidence, like Evidence Code section 352, does not implicate the federal Constitution, and thus we review allegations of error under the "reasonable probability" standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Marks* (2003) 31 Cal.4th 197, 226–227; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1125; *People v. Fudge* (1994) 7 Cal.4th 1075, 1103.) Here, even absent this evidence, there was no reasonable probability the jury would have reached a different verdict. As we have found, the evidence against defendant to support his convictions for felony stalking was strong, and the firearm eligibility notification letter and handwritten note were only a fraction of the evidence.

11.

**DISPOSITION**

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
KANE, Acting P.J.


_____
SARKISIAN, J.†

---

†Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.