Filed 5/23/16  P. v. Garcia-Rojas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C080441 |
| Plaintiff and Respondent, | (Super. Ct. No. SF128288A) |
| v. | |
| URIEL GARCIA-ROJAS, | |
| Defendant and Appellant. | |

Following the trial court's denial of his motion to suppress evidence, 14-year-old defendant Uriel Garcia-Rojas pled no contest to assault with a firearm and admitted that he used a firearm in the commission of the felony.  The trial court sentenced defendant to 14 years in prison.  On appeal, defendant contends the trial court erred in denying his motion to suppress because he did not voluntarily consent to the search that yielded the incriminating evidence.  We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 2014, Lodi City Police Officer Robert Rench responded to a shooting at a bar where a member of the Norteño street gang was shot. The shooter was thought to be a member of the rival Sureño gang. Officer Rench received information describing the parties involved as juveniles in their early to mid teens. While Officer Rench was checking the area for potential suspects, a second shooting occurred roughly two blocks away. Officer Rench responded to the second shooting as well. The second shooting was also the result of a conflict between Norteño and Sureño gang members. The suspects were described to Officer Rench as boys in their early to mid teens.

The following day, June 1, there was a car wash to raise money for a Sureño gang member who had been shot and killed in a separate incident unrelated to the shootings described above. Officer Rench expected a number of Sureño gang members to be present. While driving to the car wash, he came into contact with defendant; M., age 13; and B., age 14. They were in the general area of the car wash and very close to the location of the second shooting. Officer Rench wanted to talk to the boys because they were in the area and they fit the age description of the shooting suspects.

Officer Rench and his partner Sergeant Kent[1] stopped their patrol car next to a cigarette shop and approached the three boys. Officer Rench asked the boys if he could talk to them about the car wash. Defendant and M. stopped while B. went into the cigarette shop. Sergeant Kent followed B. into the store and the two of them walked out together. When asked about the car wash, one of the boys said they were going to buy more dish soap for the car wash. Officer Rench explained to the three of them that there were two shootings in the area the night before and asked M. if he could make sure M. did not have any weapons. M. turned around and put his hands behind his back, which

---

[1]     Officer Kent's full name does not appear in the record.

Officer Rench interpreted as permission to search. Officer Rench performed a patsearch on M. but did not find any weapons.

After the patsearch of M., defendant asked Officer Rench, " '[a]re you going to search me?' " Officer Rench replied that he did not want to search him but just wanted to pat him down for weapons. Defendant responded by turning around and placing his hands behind his back in the same manner that M. had done. Officer Rench performed a patsearch, retrieved a shotgun from defendant's waistband, and placed him under arrest.

DISCUSSION

On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence because he was illegally detained and did not voluntarily consent to the search. We disagree.

" 'In reviewing the denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence. We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure.' " (*People v. Gemmill* (2008) 162 Cal.App.4th 958, 963.)

I

*Defendant Was Not Detained*

Defendant contends that he was illegally detained when he gave consent to the search. Specifically, defendant argues that Officer Rench's statement about wanting to pat him down for weapons turned what was a consensual encounter into an illegal detention and thus the consent "was a fruit of that illegal detention." We are not persuaded.

"Where, as here, the prosecution relies on consent to justify a warrantless search or seizure, it bears the 'burden of proving that the defendant's manifestation of consent was the product of his free will and not a mere submission to an express or implied

3

assertion of authority. [Citations.]' [Citations.] Consent that is the product of an illegal detention is not voluntary and is ineffective to justify a search or seizure." (*People v. Zamudio* (2008) 43 Cal.4th 327, 341.)

"A detention occurs '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen' " (*In re Randy G.* (2001) 26 Cal.4th 556, 562) and that citizen "would have felt free to decline the officers' requests or otherwise terminate the encounter" (*Florida v. Bostick* (1991) 501 U.S. 429, 438 [115 L.Ed.2d 389, 401]). To determine when a consensual encounter is converted into a detention, we must look objectively to the totality of the circumstances. (See *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790-791.) "Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "Whether a seizure occurred within the meaning of the Fourth Amendment is a mixed question of law and fact qualifying for independent review. [Citations.] Accordingly, 'we review the trial court's findings of historical fact under the deferential substantial evidence standard, but decide the ultimate constitutional question independently.' " (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 342.)

On this issue, defendant relies on *In re J.G.* (2014) 228 Cal.App.4th 402. In that case, the defendant, 15-year-old J.G., was in a parking lot at night with his brother when a police officer approached them. (*Id*. at p. 405.) The brothers consented to speak to the officer. (*Ibid*.) Though the conversation was fairly casual, additional officers arrived at the scene to assist and monitor the two boys. (*Ibid*.) The lead officer asked for identification and performed a records check on them. (*Id*. at p. 405.) Then, the officer

asked the brothers if they had anything illegal on them and asked if he could search them. (*Id*. at p. 406.) They consented to the search of their persons, which yielded nothing illegal. (*Ibid*.) At that point, there were four officers present. (*Ibid*.) The lead officer asked the brothers to have a seat on the curb and then asked if he could search J.G.'s backpack, which J.G. consented to. (*Ibid*.) The search yielded incriminating evidence and J.G. was arrested. (*Ibid*.) The duration of the encounter was approximately 10 to 15 minutes. (*Ibid*.) The court held the encounter was initially consensual, but when the officer asked the brothers to sit on the curb it turned into a detention because a reasonable person in those circumstances would not have felt free to end the encounter. (*Id*. at p. 411.) In support of its conclusion, the court cited the persistence of the officer's suspicions without apparent reason, the increasingly intrusive nature of the encounter, the duration, and the escalating show of force and police presence throughout the encounter. (*Id*. at pp. 411, 412.)

Defendant argues that Officer Rench's statement regarding searching him was similar to the officer's request for the brothers to sit on the curb in *In re J.G.* We disagree. Here, defendant and his friends were walking down the street in the morning when the two officers approached and asked if they could talk to defendant about the car wash. After a couple of initial questions, Officer Rench asked M. if he could patsearch M. for weapons. This is different from the general investigatory search of the brothers in *In re J.G.* because Officer Rench was asking to patsearch the boys out of concern for his safety in light of the shootings that had taken place in the area the night before. Further, unlike *In re J.G.*, there was no escalating show of police force as no additional officers came to the scene. Also, in contrast to *In re J.G.*, the trial court noted the duration of the encounter in this case was "[m]aybe five minutes or less or just a few minutes or less between when the officers got up to the point where they were close enough to [defendant] and started the conversation, to the point that they had finished pat searching [defendant]."

Another point of significance to the court in *In re J.G* was the officer told the defendant to sit on the curb *after* the officer had "clearly conveyed to the brothers that he suspected them of unlawful activity." (*In re J.G.*, *supra*, 228 Cal.App.4th at p. 412.) After running the brothers' names through a records check and after a search of their persons yielded no incriminating evidence, the officer *still* asked the brothers to sit on the curb and wait. (*Id*. at p. 406.) This conveyed to the brothers that the officer suspected them of unlawful activity and made them feel they could not refuse the request, thus turning the consensual encounter into a detention. (*Id*. at p. 412.) Here, prior to the request to search, Officer Rench had asked only about the car wash, which would not indicate to defendant that Officer Rench suspected him of unlawful activity. Thus, contrary to defendant's argument, Officer Rench's statement that he wanted to conduct a patsearch was not analogous to the *In re J.G.* officer's request for the defendants to sit on the curb.

Looking to other relevant factors highlighted by *In re Manuel G.*, there is nothing in the record indicating the officers displayed their weapons in a show of force, nor did the officers touch defendant before he acquiesced to the search. There is also nothing in the record showing that Officer Rench's "language or tone of voice" indicated that compliance was compelled. (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.) The context of the encounter suggests otherwise. Prior to Officer Rench's statement regarding the search of defendant, the officer asked if he could speak to the boys about the car wash and asked if he could search M. M. consented to the search and Officer Rench found nothing. In context, after Officer Rench's requests and after the search of M. yielded no weapons, Officer Rench's statement regarding the patsearch of defendant would also be perceived as a request and not a command that compelled compliance.

Based on the totality of the circumstances, Officer Rench's statement that he wanted to patsearch defendant for weapons did not result in a detention.

## II

### *Defendant's Consent Was Voluntary*

Having concluded that defendant was not detained, we now review the trial court's finding that defendant voluntarily consented to the search. Defendant contends that Officer Rench's statement regarding patting him down for weapons was an unlawful assertion of authority resulting in defendant's involuntary consent. The People respond that Officer Rench's statement, in context, expressed his desire to pat defendant for weapons and was an alternate way of requesting permission to search rather than a statement suggesting that compliance was expected. We agree with the People.

Consent to a search must be freely and voluntarily given and the voluntariness of such consent is determined based on the "totality of all the circumstances." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227 [36 L.Ed.2d 854, 862-863].) Consent can be manifested through actions or gestures as well as words. (*People v. James* (1977) 19 Cal.3d 99, 113.)

"Our role in reviewing the resolution of this issue is limited. The question of the voluntariness of the consent is to be determined in the first instance by the trier of fact; and in that stage of the process, '[t]he power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings -- whether express or implied -- must be upheld if supported by substantial evidence.' " (*People v. James*, *supra*, 19 Cal.3d at p. 107.) "An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) A finder of fact "may not rely upon unreasonable inferences, and . . . '[a]n inference is not reasonable if it is based only on speculation.' " (*People v. Hughes* (2002) 27 Cal.4th 287, 365.) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial

7

evidence to support the verdict of the [finder of fact]." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

We are not persuaded by defendant's argument that Officer Rench's comments amounted to an unlawful assertion of authority that coerced defendant's consent. In the context of consent searches, courts have found unlawful assertions of authority that invalidate consent when officers claim to have a valid warrant. (See, e.g., *Bumper v. North Carolina* (1968) 391 U.S. 543 [20 L.Ed.2d 797]; *People v. Linke* (1968) 265 Cal.App.2d 297; *People v. Fields* (1979) 95 Cal.App.3d 972 [when officers make implied assertions of authority that give defendants no choice but to comply]; see *In re J.G.*, *supra*, 228 Cal.App.4th 402 [when officers illegally detain a defendant].)

Here, there is sufficient evidence that Officer Rench's statement was a request for permission to search and not an unlawful assertion of authority. There was neither a mention of a warrant nor an illegal detention. There was also no implied assertion of authority indicating Officer Rench's statement compelled compliance. Given the context of Officer Rench's statement -- his request to speak to the boys, his request to search M., M.'s consent, and no weapons being found during the search -- it was reasonable to infer that Officer Rench's statement to defendant that he wanted to search him for weapons was also a request for permission to search and not a command.

More importantly, after Officer Rench's comment, defendant turned around and placed his hands behind his back -- exactly what M. had done prior to being searched. This is an affirmative act by defendant that supports a reasonable inference of implied consent because, in this context, defendant knew his action would communicate to Officer Rench his consent to be searched for weapons. On review for substantial evidence, these are the inferences that this court must accept. (*People v. Maury*, *supra*, 30 Cal.4th at p. 396.) We conclude that there was substantial evidence to support the trial court's finding that defendant's consent was voluntary.

## DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Nicholson, Acting P. J.

/s/
Hoch, J.