Filed 4/18/22  P. v. Shepard CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C093912 |
| Plaintiff and Respondent, | (Super. Ct. No. 62153369) |
| v. | |
| STEPHEN MATTHEW SHEPARD, | |
| Defendant and Appellant. | |

A jury found defendant Stephen Matthew Shepard guilty of forcible rape of his partner, among other charges, after he repeatedly shoved his hand down her throat during an argument and then asked her to have sex with him, to which she relented.  On appeal, defendant contends there is insufficient evidence supporting the jury's finding the victim did not consent to the sex.  We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was charged with misdemeanor domestic violence contempt of court by violating a protective order (count 1; Pen. Code, § 166, subd. (c)(1)(B); statutory section citations that follow are to the Penal Code); torture (count 2; § 206), with the

1

enhancement it resulted in great bodily injury (§ 12022.7); forcible rape (count 3; § 261, subd. (a)(2)), with a multiple victim allegation (§ 667.71, subds. (a), (b), & (e)), which was severed for trial; corporal injury to a cohabitant (count 4; § 273.5, subd. (a)), with the enhancement it resulted in great bodily injury (§ 12022.7) and with the allegation he had a prior misdemeanor conviction for the same offense (§ 273.5, subd. (f)(1)); 12 counts of misdemeanor domestic violence contempt of court by violating a protective order (counts 5 & 7-17; § 166, subd. (c)(1)(A)); and dissuading a witness from prosecuting a crime (count 6; § 136.1, subd. (b)(2)).  There was also the allegation defendant had a prior serious or violent felony conviction (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d)) as to counts 2, 3, 4, and 6.

At defendant's trial in October 2020, Melissa R. testified that on June 30, 2017, she was an employee at a bank in Lincoln when a woman walked in who "was visibly marred, her throat was huge, shaken up, no shoes on, and asked me to call 911."  She also told Melissa R. her husband tried to kill her.  Lincoln Fire Department Captain Norman Kent, Jr., responded to the call and he said that the woman had facial trauma and it was hard for her to speak.  She told him her husband tried to force his fist down her throat multiple times.

Officer Todd Rayback also responded to the bank, who knew the woman to be Crystal P. because he had previously arrested defendant for violating restraining and protective orders against Crystal.  Rayback similarly testified to seeing Crystal's face injuries and her seeming "very frightened" and "very scared."  He also said Crystal told him defendant had accused her of sleeping with another man, they got into an argument, and he repeatedly tried to shove his hand into her mouth and throat over a couple hours.  Defendant eventually calmed down and asked Crystal to have sex with him.  She told Rayback she originally "said no, but at which time he grabbed her again and she got fearful that the assault was going to continue, so she agreed to have sex with him."  After

2

the sex, defendant told Crystal to take a shower, she said she first needed a cigarette from her car, left the house and then ran to the bank.

Crystal was taken to the hospital, where physician assistant Rachel Holmes treated her. Crystal told Holmes defendant accused her of cheating and wanted to have sex with her, "[s]he did not want to have sex with him. They got into an altercation at which point she says that he put his whole hand in her mouth. She felt like she was gagging and couldn't breathe. She eventually had consented to have sex with him to get away from him, and then was able to go leave and get cigarettes where she went to a bank and called the police." Crystal had a cut in her throat that was allowing air into her neck and eventually needed to go the intensive care unit. A sexual assault examination showed injuries consistent with Crystal having sex within the past 72 hours.

Another treating physician, Dr. Vanessa Walker, testified that Crystal experienced respiratory failure and had to be intubated and placed on a ventilator. She said Crystal's injuries were life threatening and she would have died if she hadn't been placed on life support.

Crystal testified at trial that she had been with defendant for 23 years, but they were never married. On June 30, 2017, she recalled going to the emergency room but did not remember an assault by defendant, defendant requesting to have sex or them having sex, her going to the bank, or her speaking to law enforcement. She said she didn't remember these things because she didn't want to remember them so she blocked them out of her mind.

Jaime Gerigk, chief program officer for a domestic violence and sexual assault agency, testified regarding battered women's syndrome generally without reviewing any specifics about this case. She described it as a cycle through a honeymoon phase, then a tension-building phase, followed by a triggered explosion of abuse, and then the cycle begins again with a false honeymoon phase where the abuser may apologize and promise it won't happen again. She explained that during this cycle there can be sexual abuse,

3

stating it is "very confusing for victims because oftentimes what happens is the abusive partner might use sex as a way to make up . . . after an abusive incident. And it's not really safe or consensual for that victim to say no at that point because they were just abused. And so there is a lot of fear around saying no or declining their abusive partner for any kind of sexual activity because of the abusive incident."

The jury found defendant guilty on all counts and found all allegations true, except that for count 2 it found him not guilty of torture but guilty of the lesser offense of battery causing serious injury.

On February 11, 2021, the trial court sentenced defendant to a total of 29 years in prison, comprised of: 364 days concurrent in county jail for count 1; four years (upper term) for count 2, doubled for the prior strike but stayed under section 654; eight years for count 3, doubled for the prior strike; one year four months (midterm) for count 4, doubled for the prior strike, and an additional one year four months (one-third midterm) for the great bodily injury enhancement; 364 days concurrent in county jail for counts 5 and 7 through 17; and two years (midterm) for count 6, doubled for the prior strike; plus five years for the prior conviction.

## DISCUSSION

Defendant argues that the conviction for forcible rape must be reversed because there was insufficient evidence supporting the "lack of consent" element. He contends the only evidence of nonconsensual sex is the expert's testimony that no sex during an abusive relationship's cycle of violence is consensual, which cannot prove Crystal did not consent in this specific instance. Instead, he summarizes the evidence as: "Crystal consented because she was afraid not to consent, and that this consent occurred after appellant calmed down."

Forcible rape is "an act of sexual intercourse accomplished . . . [¶] . . . [with a] person who is not the spouse of the" perpetrator where "it is accomplished against a

4

person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."  (§ 261, subd. (a)(1), (2).)  Consent means "positive cooperation . . . pursuant to an exercise of free will.  The person must act freely and voluntarily."  (§ 261.6.)  "Actual consent must be distinguished from submission. . . .  A selection by the victim of the lesser of two evils—rape versus the violence threatened by the attacker if the victim resists—is hardly an exercise of free will."  (*People v. Giardino* (2000) 82 Cal.App.4th 454, 460, fn. 3; *People v. Washington* (1962) 203 Cal.App.2d 609, 610 ["Consent induced by fear is no consent at all"].)  And evidence of "[a] current or previous dating or marital relationship is not sufficient to constitute consent."  (§ 261.6.)

Where the sufficiency of evidence is challenged on appeal, we review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence.  (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  Substantial evidence is evidence that is "reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*Ibid*.)  If substantial evidence supports the verdict, we defer to the factfinding.  (*Ibid*.)  We will not set aside judgment for insufficient evidence unless it clearly appears, "that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury."  (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

Here, there is substantial evidence Crystal did not consent to sex with defendant.  Officer Rayback and Holmes testified that Crystal said she consented only because "she got fearful that the assault was going to continue" and "she eventually had consented to have sex with him to get away from him."  This is consent by submission, which is not actual consent.  Defendant's own summary of the evidence indicates this fallacy-consenting "because she was afraid not to consent" is not consent.  The expert testimony supports this conclusion, but this conclusion does not rely solely on this testimony.

This testimonial evidence is further supported by the extensive nontestimonial evidence that defendant viciously attacked Crystal, the two had sex, and then she fled to the bank. Crystal was so badly injured she had to be sent to the intensive care unit and intubated and Dr. Walker testified her injuries were life threatening. This evidence strongly indicates a lack of consent because anyone who was beaten into such a state is very unlikely to be capable to then immediately consent to sex. Her immediate flight from the location of a vicious assault confirms she was doing and saying only what was necessary to get away from defendant.

Finally, the lone affirmative evidence defendant supplies in support of consent is "the ample evidence that Crystal and [defendant] maintained their 23-year intimate relationship after 2016." Evidence of a current or previous relationship cannot be sufficient to constitute consent, nor does it render insufficient the overwhelming evidence there was no consent here.

## DISCUSSION

The judgment is affirmed.

                                           _____

                                              HULL, J.

We concur:

_____

BLEASE, Acting P. J.

_____

RENNER, J.