Filed 4/11/16  P. v. Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>LESLIE GORDON SMITH,<br><br>        Defendant and Appellant. | C076383<br><br>(Super. Ct. No. NCR88047) |

A jury found defendant Leslie Gordon Smith guilty of four counts of committing a lewd act upon a child and one count of attempting to commit a lewd act upon a child. Defendant appeals, first contending the trial court abused its discretion by admitting evidence of his 1992 Nevada misdemeanor conviction for annoying or molesting a minor. Second, defendant argues there was insufficient evidence for the jury to convict him of attempting to commit a lewd act upon a child.  Third, defendant contends, and the People concede, that the trial court erred in calculating the Government Code section 70373 monetary assessment.  We accept the People's concession and will modify the judgment

1

to reflect the proper Government Code section 70373 assessment of $150, but we reject defendant's remaining arguments and therefore affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

In approximately 2000 to 2001, S. F. and A. G. were both five or six years old, and their mothers were friends with Shelly Smith, defendant's adult daughter. Defendant spent time with S. F. and A. G. at Shelly's house. One day S. F. and A. G. were both at Shelly's house with defendant, and he asked them if they would like to go out for ice cream. A. G. asked several of Shelly's children, "Do you guys want to go get ice cream?" Defendant "hushed" A. G. and S. F., telling them the offer for ice cream was just for them and to not tell the others.

Defendant took S. F. and A. G. to a local Baskin Robbins. After they finished, instead of heading back to Shelly's house, defendant drove down a dirt road and parked by a creek.

According to S. F., defendant reclined his seat, took their pants off, and lowered their underwear. Defendant then touched both girls' vaginas. Defendant told the girls that he "wanted to feel good too" and asked them to touch his penis and perform oral sex on him. S. F. touched defendant's erect penis but did not perform oral sex. Defendant then placed A. G. in the backseat with him, and from her place in the front seat S. F. heard A. G. making "weird noises." Later, upon returning to Shelly's house, defendant told the girls to take a shower and threatened that if they told anyone and got him in trouble he would come back and hurt their families and them.

According to A. G., defendant unbuttoned his pants and told her and S. F. to "giv[e] him oral." A. G. and S. F. took turns performing oral sex on defendant until he ejaculated. Defendant told A. G. to get in the backseat and take her pants off, which she did. She could not remember whether she took her underwear off or whether defendant touched her in the vagina area. She did recall that defendant "opened the [backseat passenger] door and stood there and looked at [her] and said, 'You are too little for this,'

2

or something like 'You are too little' or something." The next thing she remembered was taking a shower with S. F. at Shelly's house.

On two other occasions when S. F. was staying overnight at Shelly's house, defendant moved her from her sleeping bag, removed her clothes, put her into his own sleeping bag with him, and touched her.

Eight years later, S. F. disclosed to a school counselor what defendant had done to her. After receiving the report of suspected child abuse, Sergeant Richard Knox, from the Tehama County Sheriff's Department, interviewed S. F. and A. G. separately in the summer of 2009. According to Sergeant Knox, S. F. told him that A. G. was placed on top of defendant in the backseat of his car, and she moved in an "up and down fashion." In addition, he recalled that A. G. told him that when she and S. F. took a shower after the creek incident, she experienced pain in her vagina.

Before trial, the prosecutor filed a motion in limine to admit evidence of two prior sexual offenses by defendant: a 2008 felony conviction from Contra Costa County for committing a lewd act upon a child and a 1992 misdemeanor conviction from Nevada for annoying or molesting a minor. The Nevada criminal complaint alleged that defendant "willfully and unlawfully annoy[ed] or molest[ed] a minor, to-wit: in that he entered her room naked and lifted the covers off her while she slept."

Defendant opposed the motion. Following argument from counsel, the trial court ruled as follows:

"The Court is allowing that as evidence of a prior bad act. The Supreme Court has indicated [Evidence Code section] 1108 was intended to relax prior evidentiary restraints and that in as much [*sic*] as this may be labeled propensity evidence, it does not render it unfair or unduly prejudicial to the defendant.

"Both of the cases involve similar conduct to that alleged in this case. The uncharged evidence is not unduly prejudicial under Evidence Code [section] 352. The

3

introduction of this evidence will not unduly prolong the trial nor is the evidence of the uncharged sexual assaults remote or confusing.

"So I am granting the People's motion."

At trial, S. F., A. G., and Sergeant Knox testified for the prosecution.

Defendant testified in his defense. He testified he never touched S. F. or A. G. inappropriately. He admitted taking the girls to the creek after ice cream, but said he let the girls play by the creek for 15 minutes until they got cold and then took them back to Shelly's house. He denied being at Shelly's house when S. F. had a sleepover or putting S. F. in his sleeping bag. He denied that the Nevada conviction was sexual in nature, claiming he was awakened about 6:00 a.m. one morning by a 17-year-old girl's scream. He rushed into her room while naked to check on her, and when he saw her still sleeping, he went back to his room, got dressed, and went to work. He also denied sexual misconduct in the Contra Costa conviction, claiming the victim (his grandniece) was coerced to testify against him.

The jury found defendant guilty of four counts of committing a lewd act upon a child and one count of attempting to commit a lewd act upon a child (as a lesser included offense). The jury also found true the special allegation that defendant had previously committed a sexual offense against more than one victim. The court sentenced defendant to an aggregate prison term of 49 years to life.

Defendant timely appealed.

DISCUSSION

I

*Admissibility Of Defendant's Nevada Offense*

Defendant contends the evidence of the Nevada offense had "extremely low probative value" because of the dissimilarity between the Nevada offense and the charged offenses. Additionally, he maintains that the "extremely low probative value . . . was substantially outweighed by the probability of its prejudicial effect." As a result,

4

defendant contends the trial court abused its discretion and committed reversible error in admitting evidence of the Nevada offense. We disagree.

A

*Standard Of Review*

We review a trial court's determinations under Evidence Code sections 1108 and 352 under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515.) " '[T]he trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion, or consumption of time. [Citation.] Where, as here, discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.)

B

*The Purpose And Statutory Framework Of Evidence Code Section 1108*

In general, evidence of a defendant's uncharged conduct is not admissible to prove a defendant's criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) Uncharged conduct evidence is admissible when relevant to prove a fact other than the defendant's criminal disposition, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. (Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393.)

Moreover, notwithstanding subdivision (a) of Evidence Code section 1101, "[u]nder Evidence Code section 1108, in the trial of sexual offense charges, evidence the defendant committed another sexual offense may be admissible to prove the defendant has a propensity to engage in such conduct." (*People v. Cottone* (2013) 57 Cal.4th 269, 276, fn. omitted.) Uncharged sexual offense propensity evidence is permitted "so long as

the evidence is admissible under section 352." (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.)

In enacting Evidence Code section 1108, the Legislature recognized " 'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160.) Evidence Code section 1108 allows the trier of fact to consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses, both in evaluating the defendant's and the victim's credibility, and in deciding whether the defendant committed the charged sexual offense. (*Villatoro*, at pp. 1160, 1164, 1166-1167.)

"Evidence Code section 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under Evidence Code section 352 . . . . This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence." (*People v. Fitch* (1997) 55 Cal.App.4th 172, 183.)

C

*The Trial Court Did Not Abuse Its Discretion*

1. *The Evidence Of The Nevada Offense Had Significant Probative Value*

Defendant contends his Nevada offense had very low probative value and should have been excluded because it was too dissimilar from the charged offenses to support an inference that he was predisposed to commit the charged offenses. In support of this argument, he relies on *People v. Earle* (2009) 172 Cal.App.4th 372. We are not persuaded.

In *Earle,* the Court of Appeal concluded the trial judge erred in failing to sever an indecent exposure charge from an unrelated assault with intent to commit rape (sexual

6

assault) charge.  (*People v. Earle*, *supra*, 172 Cal.App.4th at pp. 378-379.)  In analyzing whether the two charges should have been tried separately, the court addressed "the extent to which evidence offered to prove the indecent exposure charge would have been admissible to prove the assault charge" (*id.* at p. 388) and, in particular, whether "evidence of the indecent exposure . . . was admissible under Evidence Code section 1108 to show that defendant had a propensity or predisposition to commit [the] sexual assault" (*Earle*, at p. 396).  The court reasoned that for a prior sex offense to be relevant under Evidence Code section 1108 "it must have some tendency in reason to show that the defendant is predisposed to engage in conduct *of the type charged*."  (*Earle*, at p. 397.)  In the court's view, without some kind of expert testimony, the defendant's commission of indecent exposure did not rationally support an inference he had a propensity or predisposition to commit sexual assault.  (*Id.* at p. 398.)  Thus, the court concluded that under the evidence before the jury, the indecent exposure offense was simply irrelevant to the assault charge.  (*Id.* at p. 400.)

Defendant relies on *Earle* to argue that the dissimilarity of two sexual offenses may be so great as to render evidence of the first inadmissible to prove a propensity to commit the second, and he contends that is the case here with his Nevada offense and the charged offenses.  We disagree.  To the contrary, our Supreme Court has held "dissimilarity alone does not compel exclusion of . . . evidence" of a prior sexual offense to prove a later sexual offense.  (*People v. Cordova* (2015) 62 Cal.4th 104, 133.)  Evidence of uncharged sexual offense(s) " 'is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101.' [Citation.] . . . 'It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' " (*People v. Loy* (2011) 52 Cal.4th 46, 63.)

In light of *Cordova* and *Loy*, it is sufficient here that the Nevada offense is a sexual offense and was thus presumably probative as propensity evidence.  To the extent defendant argues how dissimilar the Nevada offense was from the charged offenses, that

7

dissimilarity did not compel exclusion of evidence of the Nevada offense. Defendant pled no contest to "willfully and unlawfully annoy[ing] or molest[ing] a minor, to-wit: in that he entered her room naked and lifted the covers off her while she slept." This Nevada misdemeanor (Nev. Rev. Stat. § 207.260) corresponds to the offense in our Penal Code section 647.6, subdivision (a), which is expressly included in the list of "sexual offenses" in Evidence Code section 1108, subdivision (d)(1)(A).

We conclude that the trial court did not abuse its discretion in determining that evidence of the Nevada offense was probative of defendant's propensity to commit the charged sexual offenses.

2. *The Danger Of Undue Prejudice Was Minimal*

Defendant contends the probability of undue prejudice outweighed the "extremely low probative value of the uncharged sexual offense." He cites the "inflammatory nature of the uncharged conduct," the "remoteness or staleness of the conduct," and "the likelihood of uncharged conduct distracting the jurors." (Bold text omitted.) We disagree.

" 'Prejudice,' as used in Evidence Code section 352, is not synonymous with 'damaging.' [Citation.] Rather, it refers to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual, and has little to do with the legal issues raised in the trial." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.)

The trial court's "careful weighing" under Evidence Code section 352 should consider the uncharged sex offense using such factors as (1) "its nature, relevance, and possible remoteness," (2) "the degree of certainty of its commission and the likelihood of confusing , misleading, or distracting the jurors from their main inquiry," (3) "its similarity to the charged offense," (4) "its likely prejudicial impact on the jurors," (5) "the burden on the defendant in defending against the uncharged offense," and (6) "the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant

8

though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.)

On its face, the Nevada offense was not inflammatory, especially when compared with the offenses charged here. The criminal complaint was sparse on detail, indicating that defendant, while naked, entered the victim's bedroom and lifted her bed covers while she slept. This terse factual description would likely not inflame a reasonable juror's passion or tempt an emotionally-driven verdict on the charged offenses. Defendant's complaint that the prosecutor used the Nevada offense to argue that defendant "had at least a 20-year history of molesting children" merely demonstrates the evidence was probative, not that it was inflammatory.

Defendant also argues the Nevada offense was too remote. While remoteness is another factor in the Evidence Code section 352 analysis, " '[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.' " (*People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [no abuse of discretion when court admitted a 23-year old rape conviction because it properly found that the relevance outweighed the remoteness in time].) Given that the Nevada offense occurred only eight years prior to the incidents in this case, the trial court was not compelled to exclude evidence of the prior offense based on remoteness alone.

Defendant also argues the evidence of the Nevada offense was distracting because it tempted the jury to focus on his lack of punishment and decide to convict him of the charged offenses as a means to punish a serial sex offender. We disagree. The risk of distraction was low because defendant received a 90-day sentence on the Nevada offense that was suspended "on the condition that [he] enter into a counseling program and that he have no unsupervised contact with anyone under the age of 18," and pay a $75 fine. Defendant testified that he "did a year on court probation." Therefore, it is unlikely that the jury would consider defendant "unpunished" and be distracted from the more serious felony charges in the present case.

9

In sum, we conclude that the trial court did not abuse its discretion in admitting evidence of defendant's Nevada offense based on the conclusion that the probative value of that offense was not clearly outweighed by its potential prejudicial effect.

## II

### *Sufficient Evidence Supported Defendant's Attempt Conviction*

The fifth count against defendant alleged that he committed a lewd act upon A. G. by touching his penis to her vagina at the creek. The jury acquitted defendant of this charge but found him guilty of the lesser included offense of attempting to commit a lewd act. Defendant contends there was insufficient evidence to sustain the verdict of attempting to commit a lewd act. We disagree.

### A

### *Standard Of Review*

Where, as here, a defendant challenges the sufficiency of the evidence to support his conviction, the standard of review is well settled: "On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury." (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)

"An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "[A] jury may not rely upon unreasonable inferences, and . . . '[a]n inference is not reasonable if it is based only on speculation.' " (*People v. Hughes* (2002) 27 Cal.4th 287,

10

365.)  "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact]."  (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

B

*Sufficient Evidence Of Attempt*

Defendant argues that the testimony of S. F. and A. G. regarding what happened in the backseat of his vehicle at the creek was fragmented, conflicting, and confusing, providing no evidence that he moved past mere preparation to attempt to commit the lewd act on A. G.  He contends the girls' testimony invites speculation, not the abiding conviction required in the reasonable doubt standard.  (*Ibid*.)  We disagree.

"An attempt to commit a lewd act upon a child requires both an intent to arouse, appeal to, or gratify 'the lust, passions, or sexual desires of [the defendant] or the child' " " 'and . . . a direct if possibly ineffectual step toward that goal--in other words, he attempted to violate section 288.' "  (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1322.)  " ' "Although mere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt, acts which indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design will be sufficient.  [Citations.]" [Citations.]' [Citation.]  No clear marker divides acts that are merely preparatory from those initiating the criminal act.  Nonetheless, 'the more clearly the intent to commit the offense is shown . . . "the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement" ' of an attempt."  (*Ibid*.)

There was ample evidence in the record from which the jury could make a reasonable inference that defendant had attempted to commit a lewd act upon A. G. in the backseat of his vehicle.  While parked at the creek, defendant touched the vaginas of both S. F. and A. G.  According to S. F., after A. G. performed oral sex on defendant, he put

11

A. G. in the backseat with him, and S. F. heard A. G. make "weird noises." The jury also heard evidence that S. F. told Sergeant Knox in 2009 that A. G. was placed on top of defendant in the backseat of the car and S. F. saw A. G. moving in an "up and down fashion" and heard A. G. make "strange noises."

According to A. G., after defendant ejaculated he told her to get in the backseat and remove her pants. She complied. She could not remember whether her underwear came off or if defendant touched her vagina area. A. G. testified that she remembered defendant telling her, " 'You are too little for this,' or something like, 'You are too little,' or something."

Based on the foregoing evidence, viewed in the light most favorable to the judgment, the jury could have reasonably found that defendant went beyond mere preparation and did in fact attempt to commit a lewd act upon A. G. in the backseat of the car.

### III

*The Government Code Section 70373 Assessment Was Miscalculated*

Lastly, defendant contends the court miscalculated the Government Code section 70373 assessment. We agree.

Subdivision (a)(1) of Government Code section 70373 imposes an assessment for felonies and misdemeanors of $30 each and an assessment for infractions of $35 each. The trial court assessed defendant $175, which appears was calculated by multiplying $35 times his five felony counts. The calculation should have been made using the $30 felonies/misdemeanors amount. Thus, defendant's assessment should have been $150. The People concede this error, and we accept their concession.

### DISPOSITION

The judgment is modified to reduce the assessment under Government Code section 70373 from $175 to $150. As modified, the judgment is affirmed. The trial court

12

is instructed to prepare an amended abstract of judgment and forward the amended abstract to the Department of Corrections and Rehabilitation.

/s/_____
Robie, J.

We concur:

/s/_____
Nicholson, Acting P. J.

/s/_____
Mauro, J.

13