Filed 8/17/21  P. v. Edgin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074622 |
| v. | (Super.Ct.No. RIF1803994) |
| HUBERT DAVID EDGIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Davis, Judge.
Affirmed with directions.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and
Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief
Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting
and Amanda L. Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Hubert David Edgin molested a four-year-old girl who attended his wife's in-home daycare. A jury found defendant guilty of one count of sodomy or sexual intercourse with a child 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (a); count 1); one count of oral copulation or sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b); count 2); and two counts of lewd and lascivious acts upon a child under the age of 14 by force, violence, duress, or fear (§ 288, subd. (b)(1); counts 3 & 4). The trial court sentenced defendant to an indeterminate term of 40 years to life, plus a determinate term of 16 years in state prison as follows: 25 years to life on count 1, a consecutive term of 15 years to life on count 2, and consecutive terms of eight years each on counts 3 and 4.

On appeal, defendant contends the two lewd act convictions in counts 3 and 4 should be reversed because there is insufficient evidence to support the jury's verdict that any act was accomplished by force, fear, or duress. We conclude that there was insufficient evidence of force, fear, and duress to support defendant's convictions for violating section 288, subdivision (b)(1). Therefore, the convictions on counts 3 and 4 must be reduced to convictions for the lesser included offense of violating section 288, subdivision (a), and remanded for resentencing. In all other respects, we affirm the judgment.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

## FACTUAL HISTORY

Jane Doe C.F. (Jane) was six years old at the time of trial. In 2018, when Jane was four years old, she attended an in-home daycare at defendant's home that was operated by his wife. Jane had attended the daycare, two or three days a week, with other children since she was two years old for about a year and a half. Defendant and his wife's adult daughters lived in the home, as well as a son-in-law and a three-year-old grandson. Jane liked playing with defendant and called him "Papi," similar to what his grandson called him.

While at the daycare, Jane took naps in defendant and his wife's bedroom with the door closed. At times, Jane was alone with defendant in the bedroom. Sometimes defendant was naked, and Jane saw his "tail," referring to defendant's penis. Jane stated defendant "touched my private with his private," meaning defendant's penis touched her vagina. When defendant's penis touched her vagina, Jane felt "[her] private go in [her] body" and she felt like she had to pee. Defendant also touched Jane's vagina with his tongue. Jane recalled the incidents occurred "[a] lot of days." Defendant told Jane to keep it a secret and said, " 'Don't tell your mom or dad.' "

Jane kept the secret for a little while, but eventually told her parents. Jane told her parents that she saw defendant's "tail" and that he took naps in the bed with her at daycare. Jane's father immediately called defendant to ask him about what Jane had stated. Defendant explained that after he got home from work, he changed his clothes in

3

his bedroom while Jane was sleeping and that he put on a long t-shirt and got in bed with Jane for a nap every day with the door closed.

After the phone call with defendant, Jane's parents spoke to Jane again and recorded the audio of the conversation. Jane told her parents that defendant had pulled her pants and underwear down, but not all the way, and that defendant had touched her private area with his penis. Jane's father called the police to report the incident. When officers came to her house, Jane recalled that was "scary," and that she did not want to tell the police about the secret. Jane did not want to tell the police because "it was too scary."

On September 4, 2018, Dr. Jacklyn Saldana conducted a forensic interview with Jane at a hospital in Riverside. Jane did not want to tell Dr. Saldana about "the secret" because she was "too scared" to talk about it. Jane admitted that no one had told her not to tell Dr. Saldana about what defendant had done. She later stated that she thought she would get in trouble if she talked about what happened. Jane eventually stated that defendant had "bothered [her] body." Jane explained that she played a game with defendant alone in the bedroom after she took a nap where he touched her private part she uses to go pee. Jane also said she saw defendant's penis and that defendant told her " 'don't tell' " about the secret. Jane noted the secret "always happens," and that it happens "all the time" when she takes a nap.

4

Defendant's defense consisted of three character witnesses—his wife, his daughter, and a church friend, who all testified that they had not seen defendant acting improperly with children. Defendant's wife admitted that defendant would sometimes be in bed with Jane, but that she was always in the room with them. She later acknowledged she was not always with defendant when he was home or when he went into the bedroom and that there were a couple of times when she was not at home.

Defendant testified on his own behalf. He denied engaging in any act of sexual intercourse, sodomy, or oral copulation with Jane. He also denied engaging in any lewd act with Jane or touching her inappropriately. Defendant admitted that his wife was sometimes in another room of the house taking care of things while the children napped.

## DISCUSSION

Defendant contends his convictions for committing lewd acts on a child under age 14 (counts 3 & 4) should be reversed because the record does not contain substantial evidence that any act was accomplished by force, fear, or duress.

In reviewing the sufficiency of the evidence to support a conviction, appellate courts review the record in the light most favorable to the judgment to determine if there is reasonable and credible evidence from which any rational jury could have concluded the defendant was guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Hillhouse* (2002) 27 Cal.4th 469, 496; *People v. Campbell* (2020) 51 Cal.App.5th 463, 483-484.) We also " 'presume " 'in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' "

5

(*People v. Thompson* (2010) 49 Cal.4th 79, 113.) The test on appeal is not whether there is evidence to support an inference of innocence, but whether there is substantial evidence to support the verdict. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

"We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*People v. Pre* (2004) 117 Cal.App.4th 413, 421.) The credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (Evid. Code, § 312.) We simply consider whether " ' "any rational trier of fact could have found the essential elements of [the charged offenses] beyond a reasonable doubt." ' [Citations.]" (*People v. Rich* (1988) 45 Cal.3d 1036, 1081.) Unless it is clearly shown that "on no hypothesis whatever is there sufficient substantial evidence to support the verdict[,]" the conviction will not be reversed. (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.) "Given this court's limited role on appeal, defendant bears an enormous burden in claiming there is insufficient evidence to sustain his molestation convictions. If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves. [Citation.]" (*People v. Veale* (2008) 160 Cal.App.4th 40, 45-46 (*Veale*).)

Section 288, subdivision (b)(1), prohibits the commission of lewd and lascivious acts upon a child under 14 by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. The People here relied on

6

duress to prove counts 3 and 4, and the trial court instructed the jury with the duress instruction (CALCRIM No. 1111).

The definition of duress in the context of an aggravated sexual abuse of a child is well established. Duress can be committed by use of direct or implied threats, psychological pressure, or intimidation sufficient to " ' "coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' " (*People v. Soto* (2011) 51 Cal.4th 229, 246, italics omitted (*Soto*); accord, *People v. Leal* (2004) 33 Cal.4th 999, 1004.)

" '[D]uress involves psychological coercion. Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. . . . "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.' [Citation.]" (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-1320 (*Espinoza* ), quoting *People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 (*Schulz*).) " 'Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.' [Citations.]" (*Veale*, *supra*, 160 Cal.App.4th at p. 46, quoting *People v. Cochran* (2002) 103 Cal.App.4th 8, 14 (*Cochran*); see *People v. Senior* (1992) 3 Cal.App.4th 765, 775; *Schulz*, at p. 1005.)

As the California Supreme Court has explained, "duress is measured by a purely objective standard, a jury could find that the defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to this behavior." (*Soto*, *supra*, 51 Cal.4th at p. 246.) It does not matter that the victim did not fight back or even consented to the molestation. In the context of lewd acts with a child under 14, it is the defendant's menacing behavior that aggravates the crime and brings it under section 288, subdivision (b). (*Soto*, at p. 243.) Thus, "the focus must be on the defendant's wrongful act, not the victim's response to it." (*Id*. at p. 246.)

In *Espinoza*, *supra*, 95 Cal.App.4th 1287, the Court of Appeal considered whether the defendant committed multiple lewd acts by duress. In that case, the victim, L., was the defendant's 12-year-old daughter and a student in special education classes. (*Id*. at p. 1292.) When the defendant molested her on five occasions, the victim was " 'too scared to do anything. . . .' " (*Id*. at pp. 1292-1293.) After reporting the defendant's conduct to school personnel, the victim was " 'very worried about her own safety in going home.' " (*Id*. at p. 1295.) The *Espinoza* court recognized that " '[d]uress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. . . . "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.' [Citation.]" (*Id*. at p. 1320.)

The *Espinoza* court held that there was insufficient evidence of duress, explaining: "The only way that we could say that defendant's lewd act on L. and attempt at intercourse with L. were accomplished by duress is if the mere fact that he was L.'s father and larger than her combined with her fear and limited intellectual level were sufficient to establish that the acts were accomplished by duress. What is missing here is the ' "direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' [Citation.] Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat. . . .' [Citation.] No evidence was adduced that defendant's lewd act and attempt at intercourse were accompanied by any 'direct or implied threat' of any kind. While it was clear that L. was afraid of defendant, no evidence was introduced to show that this fear was based on anything defendant had done other than to continue to molest her. It would be circular reasoning to find that her fear of molestation established that the molestation was accomplished by duress based on an implied threat of molestation." (*Espinoza*, *supra*, 95 Cal.App.4th at p. 1321.) The court noted " 'the Legislature has recognized that all sex crimes with children are inherently coercive.' " (*Ibid.*)

Here, as in *Espinoza*, there was no evidence in the record that defendant used any direct threats when committing the lewd acts against Jane. The People argue the following evidence was sufficient to support a finding that defendant used implied

threats: Jane was four years old while defendant was almost 50 years old; defendant's relationship with Jane was like that of a grandfather, thereby making defendant in a position of trust; Jane was the size of a child while defendant was 5 feet 6 inches tall and weighed 150 pounds; defendant isolated Jane in the bedroom; and defendant warned Jane not to tell her parents and to keep it a secret.

However, as in *Espinoza*, we conclude there is no evidence establishing duress by implied threat. There were no threats, direct or implied, that Jane would suffer adverse consequences if she did not acquiesce to defendant's acts of sexually abusing her. Although Jane called defendant "Papi," like his grandson, defendant was not Jane's grandfather. Jane had attended daycare at defendant's home two to three times a week, and at most, was with defendant for a few hours after he returned home from work. The People's position is unpersuasive because there is no evidence defendant exacerbated Jane's vulnerability (by, for example, threatening Jane in any way) and the record does not support the People's characterization of defendant's relationship to Jane. Further, there was no evidence defendant had isolated Jane. Jane may have been more susceptible to being coerced by a threat of force due to her age. However, as previously noted, there was no evidence of a direct or implied threat, and thus any increased susceptibility to that nonexistent threat is irrelevant.

That Jane was four years old and defendant was almost 50 is significant, but without more, is not enough to support a finding that defendant accomplished the lewd acts by means of duress. (Cf. *Soto*, *supra*, 51 Cal.4th at p. 246 [ "the legal definition of

10

duress is objective in nature" and "the focus must be on the defendant's wrongful act, not the victim's response to it"].) To the extent that Jane's vulnerable position hindered Jane's ability to resist defendant's molestations, that state of affairs will not support a finding of duress unless there was also evidence that defendant did something to cause Jane's vulnerable position. *Espinoza* illustrates that fear alone does not establish duress; the fear must be based on something the defendant does or says, i.e., an express or implied threat by the defendant. Similarly, a victim's vulnerability alone does not establish duress if it is not based on something the defendant does or says.

For this reason, the People's reliance on *Veale*, *supra*, 160 Cal.App.4th 40, *People v. Pitmon* (1985) 170 Cal.App.3d 38 (*Pitmon* ), disapproved by *Soto*, *supra*, 51 Cal.4th at p. 248, footnote 12, to the extent it suggested that consent of a victim is a defense to the charge, and *Cochran*, *supra*, 103 Cal.App.4th 8 is misplaced. In *Veale*, the defendant molested his seven-year-old daughter on several occasions. (*Veale*, at p. 43.) The victim did not tell her mother about the molestations, because she feared that "something might happen to her or mother if she told" and "defendant would hurt her if she told," although the defendant never told her he would do so. (*Id*. at p. 44.) A couple of times the victim objected to the defendant molesting her. The defendant relented and did not make the same requests again. (*Ibid*.) We held that there was sufficient evidence of duress and explained: "A reasonable inference could be made that defendant made an implied threat sufficient to support a finding of duress, based on evidence that [the child] feared defendant and was afraid that if she told anyone about the molestation, defendant would

11

harm or kill [her], her mother or someone else.  Additional factors supporting a finding of duress include [the child's] young age when she was molested; the disparity between [the child's] and defendant's age and size; and defendant's position of authority in the family." (*Id*. at p. 47.)

In contrast to *Veale*, there was no evidence that Jane was afraid of defendant. There was no evidence supporting a finding defendant committed forcible lewd acts by means of a direct or implied threat.  There was no evidence that Jane objected to or resisted defendant's act of molesting her when he committed the instant offenses.  There was also no evidence Jane feared that if she reported the molestation, defendant would kill her, her mother, or another family member.  Thus, this court cannot infer that defendant made an implied threat.

In *Cochran*, the victim was nine years old and was molested by her father, with whom she resided.  (*Cochran*, *supra*, 103 Cal.App.4th at p. 15.)  The appellate court concluded that "given the age and size of the victim, her relationship to the defendant, and the implicit threat that she would break up the family if she did not comply," there was evidence of duress.  (*Id*. at p. 16.)  Similarly, in *Pitmon*, there was sufficient evidence to sustain the defendant's conviction for a lewd and lascivious act by force and duress based on the victim's young age, the physical size difference between the eight-year-old victim and the adult defendant who was a stranger, the isolated location in which the sex act took place, and the defendant's use of physical force beyond that necessary to accomplish the lewd act.  (*Pitmon*, *supra*, 170 Cal.App.3d at pp. 48, 51.)  *Pitmon* also

12

focused on the defendant's use of force in committing the various acts as evidence of "an implied threat of force, violence, hardship or retribution which prompted [the child] against his will to participate in the sexual acts." (*Id*. at p. 51.)  In both cases, the defendants did an affirmative act, whether it be to isolate or to impliedly threaten the victims, in addition to taking advantage of unalienable characteristics.  There is no evidence defendant did that here.  And, unlike in *Pitmon*, here, there was no evidence of force.

In sum, there was insufficient evidence defendant committed the lewd acts in counts 3 and 4 by means of force, violence, duress, menace, or fear of immediate, unlawful bodily injury.  However, when there is overwhelming evidence that a defendant is guilty of a lesser included offense, the order may be reduced to the lesser offense. (*People v. Steger* (1976) 16 Cal.3d 539, 553; *People v. James* (2014) 230 Cal.App.4th 1256, 1265; § 1181.)  Accordingly, we reduce defendant's section 288, subdivision (b)(1) conviction to reflect a conviction of the lesser included offense of nonforcible lewd acts on a child under section 288, subdivision (a), and remand the matter for resentencing.[2] (*Espinoza*, *supra*, 95 Cal.App.4th at pp. 1321-1322; *People v. Kelly* (1992) 1 Cal.4th 495, 528.)

---

[2] We disagree with defendant's assertion in his reply brief that if we reduce his convictions on counts 3 and 4, we should order the sentences on these counts stayed pursuant to section 654.  Contrary to his contention, there was sufficient evidence to establish that more than two sexual acts were committed against Jane by defendant.

13

## DISPOSITION

Defendant's conviction on counts 3 and 4 are modified to commission of lewd and lascivious acts on a child under the age of 14 (§ 288, subd. (a)).  The matter is remanded for resentencing.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.