Argued and submitted May 10, affirmed June 26, petition for review denied
October 3, 1996 (324 Or 306)

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT McEWEN PHELPS,
*Appellant.*

(CM 93-1659; CA A83705)

920 P2d 1098

Walter J. Todd argued the cause and filed the brief for appellant.

Eleanor E. Wallace, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant appeals his jury conviction of rape in the first degree, ORS 163.375(1)(d). We affirm.

The alleged victim is mentally handicapped and suffers from an extreme form of autism. As a result of her disabilities she is a resident of Oregon Community Support (OCS), a state-licensed residential treatment facility. Her condition generally requires one-on-one staff attention to manage her disabilities. Defendant worked at OCS and was one of the victim's primary care-givers. In October 1993, while at work, defendant engaged in sexual intercourse with the victim. Subsequently, he was charged with rape in the first degree, ORS 163.375(1)(d). At trial, defendant admitted that he had had sexual intercourse with the victim but testified that she had consented to the intercourse.

In his first assignment of error, defendant contends:

> "The trial court erred by finding ORS 163.325(3) does not unconstitutionally shift the burden of proving an element of the state's case to the defendant and by giving [a] corresponding jury instruction [to that effect]."

In substance, defendant argues that ORS 163.375(1)(d) requires that the state prove that he knew that the victim was incapable of consenting to intercourse and that ORS 163.325(3) denies him due process because it shifts the burden to him to prove that he did not know of the victim's mental disability.

■        Defendant's first assignment of error raises two issues that are intertwined. The first inquiry concerns the elements that the state must prove in order to convict defendant of rape in the first degree under ORS 163.375(1)(d), which provides:

> "A person who has sexual intercourse with another person commits the crime of rape in the first degree if:
>
> "* * * * *
>
> "(d)  The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

The second issue is raised by defendant's challenge to the constitutionality of ORS 163.325(3), which provides an affirmative defense to a charge made under ORS 163.375(1)(d):

"In any prosecution under ORS 163.355 to 163.445 in which the victim's lack of consent is based solely upon the incapacity of the victim to consent because the victim is mentally defective, mentally incapacitated or physically helpless, *it is an affirmative defense for the defendant to prove that at the time of the alleged offense the defendant did not know of the facts or conditions responsible for the victim's incapacity to consent.*" (Emphasis supplied.)

Defendant agrees that the statutory elements for rape in the first degree as set forth in ORS 163.375(1)(d) are sexual intercourse with an individual who is incapable of consenting due to a mental defect. However, he contends that under ORS 161.115(2)[1] and ORS 161.095(2)[2] the state must prove that he acted "knowingly with respect to every element of ORS 163.375(1)." Therefore, he says, when ORS 163.375-(1)(d) is read with those statutes, the state is required to prove that he *knew* that the victim was incapable of consenting to sexual intercourse.

It is clear, when the text and context of ORS 163.375(1)(d) and ORS 163.325(3) are read together, that the legislature did not intend to require the state to prove that defendant acted with a culpable mental state with regard to whether the victim lacked the mental capacity to consent. ORS 163.325(3), which places the issue of a defendant's knowledge regarding the victim's mental capacity squarely on a defendant, would be rendered meaningless under defendant's construction. Moreover, defendant's argument that 161.115(2) and ORS 161.095(2) require the state to prove that he acted knowingly with respect to every element of ORS

---

[1] ORS 161.115(2) provides:

"Except as provided in ORS 161.105 if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

[2] ORS 161.095(2) provides:

"Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

163.375(1) proves too much. By its expression in ORS 163.325(3), the legislature has indicated its intention that knowledge of the incapacity to consent of a person within the definition of ORS 163.375(1)(d) is not a material element of the offense and that that statute controls over the general mandate of ORS 161.115(2) and ORS 161.095(2).

We turn to defendant's constitutional argument that he has been denied due process because ORS 163.325(3) and ORS 163.375(1)(d) shift the burden to him to prove that he did not know of victim's mental disability.[3] In *State ex rel Mikkelsen v. Hill*, 315 Or 452, 458-59, 847 P2d 402 (1993), the Supreme Court discussed the requirements imposed on a state under the Due Process Clause. It stated in part:

"[The legislature] may place upon a defendant the burden of going forward on an affirmative defense so long as the state is required to prove each element of the crime beyond a reasonable doubt. *Patterson v. New York*, 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977). This court summarized the rule of those federal cases several years ago: '*Unless an affirmative defense has the effect of transferring to the defendant the burden of disproving an element of the prosecution's case, the affirmative defense will be permitted.*' *State v. Burrow*, 293 Or 691, 653 P2d 226 (1982)." (Emphasis supplied.)

The court's citation to *Patterson* is instructive as to how to identify the elements that are constitutionally necessary for the crime of rape of an incapacitated person. In *In re Winship*, 397 US 358, 362, 90 S Ct 1068, 25 L Ed 2d 368 (1970), the Court held that due process requires that the prosecution prove beyond a reasonable doubt "every fact necessary to the crime" charged. In *Patterson*, the Court adhered

---

[3] We understand defendant's arguments to be based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Oregon's Constitution does not contain a due process clause. *State v. Clark*, 291 Or 231, 235 n 4, 630 P2d 810, *cert den* 454 US 1084 (1981). Although defendant has cited other constitutional provisions, specifically the Equal Protection Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, sections 12 and 20, of the Oregon Constitution, he does not make any arguments under those provisions nor does he offer any explanation as to their application. Therefore, we summarily reject those arguments. Defendant also argues that ORS 163.325(3) denies him the presumption of innocence and the right to be proven guilty beyond a reasonable doubt accorded to him under Article I, section 33, of the Oregon Constitution. That argument was not preserved below, and we decline to address it.

to that statement but noted that the creation of affirmative defenses is ordinarily within the power of the states unless the exercise of the power "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 US at 201-02 (quoting *Speiser v. Randall*, 357 US 513, 523, 78 S Ct 1332, 2 L Ed 1460 (1958)). The facts in *Patterson* demonstrate the application of the principle. In that case, a New York law required that a defendant prove the affirmative defense of extreme emotional disturbance to reduce the crime of second-degree murder to manslaughter. The Court ruled that the law did not violate the Due Process Clause. It reasoned that, under New York law, the state was required to prove the death, the intent to kill, that the defendant caused the death and that no further facts need be demonstrated to constitute the crime. Therefore, the affirmative defense that required the defendant to prove that he acted under the influence of extreme emotional disturbance was an issue discrete from the traditional requirements placed on the state to prove the crime of murder. Thus, there was no unconstitutional switching of the burden of proof from the state to the defendant.[4]

■  In this case, the elements that the state must prove under ORS 163.375(1)(d) are that defendant knowingly had sexual intercourse with the victim and that, at the time, the victim was incapable of consent by reason of mental disability. Defendant has not directed us to any authority that suggests that the fundamental and traditional requirements of rape of an incapacitated person required that the perpetrator know that the victim was incapable of consent. ORS 163.325(3) is derived from the New York Revised Penal Code section 130.10. At the time of its adoption in 1971, there were no reported cases in Oregon on the availability of the defense of mistake as to consent in prosecutions for rape. Oregon Criminal Code of 1971, Commentary § 106, at 136 (Final

---

[4] Our Supreme Court considered a similar issue in *State v. Burrows*, 293 Or 691, 653 P2d 226 (1982). In that case, the defendant was convicted of two robberies and of felony murder. On appeal, he argued that an instruction based on a statute requiring a defendant to prove certain circumstances that would relieve him of liability for felony murder violated the Due Process Clause. The court undertook a comparison of the instructions given in the case to determine if they effectively required the defendant to disprove an element of the underlying crimes and concluded that, when considered as a whole, they did not.

Draft and Report 1975). Thus, it appears that before the enactment of ORS 163.325(3), no such defense existed, nor was the state required to prove knowledge of incapacity as an element of rape. Furthermore, we have held that no constitutional infirmity exists under the Due Process Clause when a statute makes it unlawful to have sexual intercourse with a person under the age of 16 without proof of a culpable mental element as to the victim's age. *See State v. Jalo*, 72 Or App 479, 696 P2d 14, *rev den* 299 Or 443 (1985). In the light of the foregoing, it is incongruous to believe that requiring defendant to prove the mitigating circumstance of lack of knowledge of incapacity somehow offends fundamental and traditional notions of justice. Accordingly, we reject defendant's argument that ORS 163.325(3) violates the Due Process Clause.

■    In his second assignment of error, defendant contends that the trial court erred by not holding that ORS 163.305(3) and ORS 163.375(1)(d) are void for vagueness. He argues that

"there is no reasonable degree of certainty as to what mental state a sexual partner must have in order to avoid a rape charge under ORS 163.305(3) thus violating Article I, sections 20 and 21 of the Oregon Constitution"

and the Fifth and Fourteenth Amendments to the United States Constitution. The analysis under the Oregon and the federal constitutions is similar. *State v. Robertson* 293 Or 402, 409, 649 P2d 569 (1982).

ORS 163.305(3) defines "mentally defective" and provides:

"Mentally defective means that a person suffers from a mental disease or defect that renders the person incapable of appraising the nature of the conduct of the person."

In *State v. Vasey*, 80 Or App 765, 767-68, 723 P2d 1068, *rev den* 302 Or 299 (1986), we stated:

"The flaw of a vaguely worded criminal statute is that, by imprecisely defining criminal conduct the legislature impermissibly delegates to the police, judges and juries the power to decide whether conduct is punishable and invites unequal application of the penal laws. Vague statutes also fail adequately to apprise ordinary persons of what conduct

is proscribed. *See State v. Robertson* 293 Or 402, 408-09, 649 P2d 569 (1982)."

■       In this case, ORS 163.375(1)(d) makes it a crime for a defendant to engage in sexual intercourse with a victim who is *"incapable of consent* by reason of mental defect." (Emphasis supplied.) ORS 163.305(3) provides that "mentally defective" means that the person is "incapable of *appraising the nature of the conduct* of the person." (Emphasis supplied.) A statute need not define an offense so precisely that a person can determine "the specific conduct that will fall within reach of the statute, but a reasonable degree of certainty is required." *City of Portland v. Levi*, 98 Or App 341, 344, 779 P2d 192 (1989), *rev den* 309 Or 645 (1990). We conclude that the statutes do not invite unequal application of the law and that they apprise potential violators of the proscribed conduct with reasonable certainty.

■       In his third assignment of error, defendant argues that the trial court abused its discretion under OEC 403 when it denied defendant's motion to exclude evidence of a steel helmet worn by the victim. In making its ruling, the trial court concluded:

> "Well I am going to deny your objection. I feel that the jury needs to have an understanding of—[the victim], her background and capacity and the helmet and its use in the last three years or so while she was at the Community Support is part of her being.
>
> "And I do not feel that it would be overly prejudicial to have the helmet here in the courtroom and demonstrate it to the jury."

The record indicates that the court was cognizant of the legal requirements of OEC 403 and undertook the required weighing process. We review the decision for an abuse of discretion and will generally defer to its ruling as to whether the probative value of the evidence is substantially outweighed by the potential for prejudice. *State v. Meyers*, 132 Or App 585, 587, 889 P2d 374 (1995).

■       In this case, defendant admitted having sexual intercourse with the victim. Thus, the only issues for the jury were

whether the victim lacked capacity to consent to sexual intercourse and, if so, whether defendant met his burden of proof under ORS 163.325(3). A substantial portion of the state's evidence concerned the victim's mental condition. She was transferred to OCS in 1989. Before that time, she was a resident at the Fairview Training Center. While at Fairview, the victim engaged in self-destructive and aggressive behaviors that included banging her head against walls and other objects and hitting and biting herself and others. The victim's behavior led to the need for her to wear a steel helmet to protect herself and others. At the time of the victim's transfer, defendant was employed as a Community Integration Specialist for OCS, worked with the victim during her transition from Fairview and knew of her need for the helmet. However, sometime during 1990, she was no longer required to wear the helmet because of her response to therapy.

Defendant did not object to testimony regarding the victim's condition or the fact that she wore the helmet; he objected only to the admission of the helmet itself into evidence. The helmet was probative of victim's condition, her capacity to consent and of defendant's knowledge regarding her mental abilities. It also assisted those who were unfamiliar with the device in understanding the testimony. There is nothing apparent about the helmet that would cause the jury's passions to become inflamed or prompt it to decide the case improperly. We conclude that the trial court did not abuse its discretion in concluding that the danger of unfair prejudice to defendant did not substantially outweigh the probative value of the helmet as evidence.

Affirmed.