Filed 9/13/21  P. v. Coleman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090363 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE000404) |
| v. | |
| ARTAVIOUS DEYOUNG COLEMAN, | |
| Defendant and Appellant. | |

After a jury found defendant Artavious DeYoung Coleman guilty of assault with a semiautomatic firearm on a peace officer, making criminal threats, being a felon in possession of a firearm, and resisting an executive officer, the trial court found true an allegation that he had a prior conviction in the State of Oregon for a serious felony. On appeal, defendant argues: (1) insufficient evidence supported the assault with a semiautomatic firearm charge; (2) insufficient evidence supported the prior serious felony finding; and (3) the trial court erred in imposing various fines and fees. We also

1

requested supplemental briefing on whether it was prejudicial error to not instruct the jury on the lesser included offense of assault with a firearm on a peace officer.

We will reverse the conviction for assault with a semiautomatic firearm on a peace officer and the trial court's true finding as to the Oregon felony conviction, modify the judgment, and remand the matter with directions.

BACKGROUND

*Charges*

Defendant was charged with five felonies: attempted murder of a peace officer (Pen. Code,[1] §§ 664/187, subd. (a), 664, subd. (e)(1); count one) with the enhancement he personally used a firearm (§ 12022.53, subd. (b)); assault with a semiautomatic firearm on a peace officer (§ 245, subd. (d)(2); count two) with the enhancement he personally used a firearm (§§ 12022.53, subd. (b), 12022.5, subds. (a), (d), 1203.06, subd. (a)(1)); criminal threats (§ 422; count three) with the enhancement he personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)); felon in possession of a firearm (§ 29800, subd. (a)(1); count four); and resisting an executive officer (§ 69; count five) with the enhancement that a principal was armed with a firearm (§ 12022, subd. (a)(1)). It also was alleged that defendant had a prior serious felony conviction within the meaning of section 1192.7, subdivision (c) (§§ 667, subds. (a), (b)-(i), 1170.12).

*Trial*

Officer Ryan Gross testified that while trying to pull over defendant's vehicle, defendant got out of the car and ran. Gross chased and eventually tackled defendant but he struggled free. Gross warned defendant he would be tased, then he heard a click, which sounded like a gun being "dry-fired," i.e., pulling the trigger of a firearm without ammunition in the firing chamber, and defendant said, "I'm gonna shoot your ass, I'm

---

[1]     Undesignated statutory references are to the Penal Code.

2

gonna shoot you right now." Gross then tased defendant, who fell to the ground. While Gross was trying to handcuff defendant, he found defendant was holding a firearm. The two struggled while Gross tried to secure the gun, with defendant biting the officer's wrist. Other officers eventually arrived and helped subdue defendant. Gross gave the firearm taken from defendant to Officer Michael Bradley.

Officer Bradley testified he took the firearm at the scene and found the magazine contained ammunition but that the magazine was not fully inserted. He inspected it further and found no live rounds in the chamber, so it was loaded but it was not ready to fire. There was not a spent casing in the firing chamber.

Detective Ryan Oliver testified as a firearms expert. He identified the gun recovered as a Lorcin .380 semiautomatic firearm. He said he heard a metallic click on Gross's body camera video consistent with the defendant's gun dry firing. He also dry-fired the weapon for the jury.

Detective Oliver further testified that the gun was missing an extractor. An extractor, he explained, is designed to remove a spent bullet casing from the firing chamber. He was unsure what would happen if the gun fired a round, testifying the spent casing "could stay in there or it could possibly come out just from the back pressure of the chamber pressure from the ammunition. I mean, it's not—it's obviously designed to have that extractor and that is going to be what makes it reliable, but without testing this firearm and firing it multiple times, I can't say exactly what would happen with the ammunition; if it would stay in the chamber or not." He confirmed that the firearm, without the extractor, still would be able to fire. But if the spent casing remained in the chamber, the shooter would have to physically remove it with a cleaning rod or use gravity to allow the bullet casing to fall out of the chamber.

Forensic investigator Maureen O'Connor testified that she test-fired the gun twice but did not notice whether the firearm had an extractor.

The jury found defendant not guilty of attempted murder, but guilty of all other counts, also finding true the firearm enhancements for these counts.

*Prior conviction and sentencing*

Defendant waived his right to a jury trial on a 2010 Oregon conviction. At the bench trial, the prosecution submitted documents showing defendant was charged with first degree rape (Or. Rev. Stat., § 163.375, subd. (1)) and pleaded no contest to the lesser included offense of attempted first degree rape (Or. Rev. Stat., § 161.405, subd. (2)(b)). To support the plea, the Oregon prosecution said it planned to offer evidence that the victim, a 15-year-old girl, drank beer and fell asleep in a bedroom of an apartment, she awoke after about two hours to defendant "on top of her with his penis inserted into her vagina, that she yelled at him to get off of her and that he very quickly got up and ran out of the apartment." The prosecutor also said defendant eventually admitted to police he had sex with the victim but claimed it was consensual. During the plea hearing in the Oregon matter, the judge asked about the incapability of consent element of first degree rape and the prosecutor said there were two theories: the victim was "physically unconscious" or that she was "quite intoxicated" after having "between seven to eight drinks." Based on these documents, the trial court here found defendant had been "convicted of attempted rape" and that "corresponds and constitutes a strike under California three strikes law."

The court sentenced defendant to the upper term of nine years for assault on a peace officer with a semiautomatic weapon, one-third the midterm of eight months for felon in possession of a firearm, both doubled for the prior strike, plus 10 years on the firearm enhancement for an aggregate term of 29 years four months. The court stayed the imposition of sentence under section 654 for the criminal threats and resisting an

4

executive officer convictions (without first imposing the sentences),[2] and also struck the five-year prior conviction enhancement.

The court imposed a $10,000 restitution fine (§ 1202.4, subd. (b)), a $10,000 parole revocation restitution fine (§ 1202.45), a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373).  Defendant's counsel moved to strike all fines and fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) due to defendant's indigence.  The court considered *Dueñas* and found defendant had the ability to pay the fines and fees imposed because he will be able to earn income in prison, so it denied the motion.

DISCUSSION

I

*Assault with a Semiautomatic Weapon*

We address two issues involving the conviction for assault on a peace officer with a semiautomatic weapon.  Defendant first contends there was insufficient evidence to support this conviction.  He asserts the evidence shows the weapon "could not fire in a semiautomatic mode of operation because it lacked a requisite component, the extractor, to allow it to reliably fire in such a fashion."  The People disagree, pointing to the evidence that an extractor is not absolutely necessary to make a gun semiautomatic and that the gun had been test-fired twice.

A related issue, not originally raised by the parties, is whether the trial court was required to instruct on the lesser included offense of assault on a peace officer with a

---

[2]   "When section 654 applies, the proper procedure is to impose sentence on both counts and stay execution of sentence on one of the counts.  [Citations.]" (*People v. Sanchez* (2016) 245 Cal.App.4th 1409, 1415; see also *People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164 [where prison term for current offense was subject to doubling and was also subject to stay under section 654, court should have imposed the term, doubled it, and stayed it].)

5

firearm. Given the testimony regarding the absence of an extractor, it was possible that the gun could not have functioned as a semiautomatic weapon, justifying instruction on a lesser offense. We requested supplemental briefing on this issue, asking the parties to address whether assault with a firearm on a peace officer (§ 245, subd. (d)(1)) is a lesser included offense of assault with a *semiautomatic* firearm on a peace officer (§ 245, subd. (d)(2)) and, if so, whether the failure to instruct on this crime was prejudicial.

In their supplemental briefs, the parties agree that assault on a peace officer with a firearm is a lesser included offense. But the People contend there was no evidence supporting the conclusion that the gun was anything other than a semiautomatic firearm, and even if there was, defendant was not prejudiced because his defense theory was that he did not fire the weapon at all, and his counsel confirmed there was no need for instruction on any lesser included offenses. Defendant urges us to find prejudicial error because there was evidence supporting the lesser offense and the jury was given an all-or-nothing choice.

We find defendant has the more persuasive argument on both issues.

A.     *Lesser included offense instruction*

A trial court "must, on its own initiative, instruct the jury on lesser included offenses when there is substantial evidence raising a question as to whether all the elements of a charged offense are present [citations], and when there is substantial evidence that the defendant committed the lesser included offense, which, if accepted by the trier of fact, would exculpate the defendant from guilt of the greater offense." (*People v. Cook* (2006) 39 Cal.4th 566, 596.) We review de novo the trial court's failure to instruct on a lesser included offense, considering the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

We agree with the parties that assault on a peace officer with a firearm is a lesser included offense. Section 245, subdivision (d)(1) prohibits "assault with a firearm upon the person of a peace officer," while subdivision (d)(2) prohibits "assault upon the person

6

of a peace officer . . . with a semiautomatic firearm." The only difference between the offenses is the type of weapon used and "firearm assault is a lesser included offense of a semiautomatic firearm assault." (*People v. Martinez* (2012) 208 Cal.App.4th 197, 199.)

The statute does not define "semiautomatic firearm," but our Supreme Court has described the term in other contexts as referring to a gun that " 'fires once for each pull on the trigger and reloads automatically, but requires the shooter to release the trigger lever before another shot can be fired.' " (*In re Jorge M.* (2000) 23 Cal.4th 866, 874, fn. 4; see also § 17140 [similarly defining " 'semiautomatic pistol' "].) The trial court's instruction to the jury was consistent with this definition, providing: "A semiautomatic firearm extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger." (See CALCRIM No. 860.)

There is substantial evidence supporting the lesser offense because there was evidence presented from which a jury might conclude that the firearm used by defendant in this case could not operate semiautomatically. Detective Oliver testified that the spent casing "could stay in there or it could possibly come out just from the back pressure of the chamber pressure from the ammunition"; he could not say for certain without firing the weapon, which he had not done. This testimony, indicating that without the extractor the gun may *not* extract a fired cartridge and chamber a fresh cartridge with each pull of the trigger, is " 'substantial enough to merit consideration' by the jury." (*People v. Wyatt* (2012) 55 Cal.4th 694, 698 ["In this regard, the testimony of a single witness . . . may suffice to require lesser included offense instructions"].) The court therefore erred in not instructing the jury on assault of a peace officer with a firearm.

The determinative issue, then, is whether this error is prejudicial. "A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable

7

outcome had the error not occurred ([*People v.*] *Watson* [(1956)] 46 Cal.2d 818, 836)." (*People v. Breverman* (1998) 19 Cal.4th 142, 178, fn. omitted.)

Courts generally find lesser included offense error harmless if (1) the jury made a separate finding indicating it would have necessarily rejected the lesser offense (see *People v. Lancaster* (2007) 41 Cal.4th 50, 85 [jury's finding that kidnapping-murder special circumstance was true necessarily rejected factual theory on which the lesser included offense instruction rested]); (2) the defense invited the error because not instructing on the lesser offense was an explicit tactical decision (see *People v. Cady* (2016) 7 Cal.App.5th 134, 145-146); or (3) the evidence was so strong in favor of the greater offense that it is not reasonably probable the jury would have convicted on the lesser offense. (See *People v. Banks* (2014) 59 Cal.4th 1113, 1161 [error was harmless because it was not reasonably probable that the jury, if properly instructed, would have concluded defendant shot the victim out of malice unrelated to robbery], overruled on another ground as stated in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

When none of these circumstances exist, and the lesser included offense is supported by substantial evidence, courts find prejudicial error "because it is reasonably probable at least one juror would have rejected the prosecution's inferences and concluded defendant" did not commit the greater offense had they been properly instructed. (*People v. Walker* (2015) 237 Cal.App.4th 111, 118; see *People v. Baker* (1999) 74 Cal.App.4th 243, 253; *People v. Hayes* (2006) 142 Cal.App.4th 175, 182-183; *People v. Racy* (2007) 148 Cal.App.4th 1327, 1335.)

None of the circumstances supporting harmless error are present here. The jury was not asked to determine whether the gun was a semiautomatic for other charges so we cannot say it would have necessarily rejected the lesser included offense instruction.

The defense also did not explicitly say that it was a tactical decision to not request the lesser included offense. The court is relieved of its duty to sua sponte instruct on a lesser included offense if "the record clearly reflects that defendant and his counsel

8

expressed a deliberate tactical purpose in resisting instructions on" the lesser included offense. (*People v. Beames* (2007) 40 Cal.4th 907, 927; *People v. Cady, supra*, 7 Cal.App.5th at p. 146 ["defense counsel made a deliberate tactical choice to forgo an instruction on the lesser included offense"].) The People correctly note that defense counsel agreed with the prosecution that no lesser included offenses applied or fit within the defense's theory, defense counsel did not argue the gun was a non-semiautomatic firearm in his closing statements, and the defense focused on whether defendant fired the weapon at all. But none of these facts evince an affirmative tactical choice to not pursue an argument the gun was not a semiautomatic. Instead, it appears the parties simply failed to consider the potential application of the lesser included offense based on the missing extractor, and this is not enough to relieve the court of its duty to instruct on the lesser offense. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196 ["The jury's exposure to 'the full range of possible verdicts—not limited by the strategy, ignorance, or mistake of the parties . . . ensure[s] that the verdict is no harsher or more lenient than the evidence merits' "].)

Finally, the evidence was not "so strong" in support of a finding that defendant's firearm could extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger such that it is not reasonably probable the jury would have convicted on the lesser offense. Indeed, as discussed below, we find that the verdict on the greater offense does not rest on substantial evidence. We consequently conclude the court committed prejudicial error in not instructing the jury on the lesser included offense of assault on a peace officer with a firearm (§ 245, subd. (d)(1)).

B.    *Sufficiency of the evidence*

We review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Substantial evidence is evidence that is "reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable

9

doubt." (*Ibid.*) From the evidence, we draw all inferences supporting the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Before the judgment can be set aside for insufficient evidence, "it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.) However, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding. [Citations.]" (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

The evidence supporting semiautomatic operation was incomplete and rested on conjecture, not evidence. Although Detective Oliver testified generally that the Lorcin .380 was a semiautomatic firearm, he explained that the extractor helped give the gun the ability to function as a semiautomatic because it is what makes the gun "reliable." Without the extractor, he testified it was possible the spent casing could remain in the chamber. But there was no testimony that the specific firearm in question operated as a semiautomatic firearm without the extractor. Thus, Detective Oliver's testimony could not establish the issue either way—he could only speculate as to what might happen with each pull of the trigger.

Investigator O'Connor test-fired the weapon twice, but she did not testify about whether the gun extracted the casings or whether she manually cleared the firing chamber. Her testimony was brief and ambiguous:

"Q    And were you able to fire it using your own department's ammunition?

"A    Yes.

"Q    And how many times did you fire it?

"A    Twice.

"Q    And did you notice whether the firearm had an extractor?

"A    No, I did not.

10

"Q    Okay.  Are you familiar with the interworkings [*sic*] of firearms?

"A    Not the interworkings [*sic*]; just the basic workings as far as making sure a weapon is safe and how to clear it and prepare it for test firing."

None of this testimony is evidence that defendant's gun could "extract[ ] a fired cartridge and chamber[ ] a fresh cartridge with each single pull of the trigger," as the jury was required to find beyond a reasonable doubt on this element.  Investigator O'Connor did not testify to having to manually remove the spent casing after firing the first round, so one might infer that she did not have to.  This inference, however, does not rest on evidence.  (*Kuhn v. Department of General Services*, *supra*, 22 Cal.App.4th at p. 1633.)  In fact, the opposing inference, that O'Connor manually removed the cartridge casings, is equally likely and just as reasonable based upon her vague testimony.  Relying on O'Connor's testimony to find the gun operated semiautomatically would require just as much speculation as relying on Detective Oliver's testimony.

Ultimately, we find no substantial evidence that defendant's gun could extract a fired cartridge and chamber a fresh cartridge with each pull of the trigger.  Finding otherwise would require speculation based on ambiguous evidence.  We therefore conclude that this finding was not supported by substantial evidence.  This does not end our analysis, however.

Our Supreme Court has " 'long recognized that under [ ] sections 1181, subdivision 6, and 1260, an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense.' " (*People v. Bailey* (2012) 54 Cal.4th 740, 748, fn. omitted.)  "The purpose for allowing an appellate court to modify the judgment to a lesser included offense is to 'obviate the necessity of a new trial when the insufficiency of the evidence only goes to the degree of the crime.' [Citation.]" (*People v. Matian* (1995) 35 Cal.App.4th 480, 487.)

11

Substantial evidence introduced at trial supports a finding that defendant assaulted Officer Gross with a functional firearm. Consequently, we will modify defendant's conviction for assault with a semiautomatic firearm on a peace officer (§ 245, subd. (d)(2)) to the lesser included offense of assault with a firearm on a peace officer (§ 245, subd. (d)(1)).

II

*Foreign Conviction*

Defendant next contends the trial court erred in finding his Oregon conviction for attempted first degree rape qualified as a prior serious felony under our three strikes law because Oregon's first degree rape statute lacks a requirement that the defendant knew of a victim's incapacity, an element required under the corresponding California statute; the People agree insufficient evidence supports the strike finding. We agree with the parties.

We review defendant's challenge to the trial court's strike finding in accordance with the usual rules on appeal applicable to claims of insufficient evidence, as detailed above. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Under California's three strikes law, a defendant's sentence is enhanced upon proof the defendant has been previously convicted of a strike—a " 'violent felony' " as defined in section 667.5, subdivision (c), or a " 'serious felony' " as defined in section 1192.7, subdivision (c). (§§ 667, subd. (f)(1), 1170.12, subd. (d)(1).)

" ' "In order for a prior conviction from another jurisdiction to qualify as a strike under the Three Strikes law, it must involve the same conduct as would qualify as a strike in California" ' [citation], and the statutory elements of the foreign crime must include all the elements of the California strike offense [citation]. 'There is, however, no guarantee the statutory definition of the crime in the other jurisdiction will contain all the necessary elements to qualify as a predicate felony in California.' [Citation.] Thus, if the foreign law can be violated in different ways, and ' "the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was

12

for the least offense punishable under the foreign law." ' [Citation.]" (*People v. Denard* (2015) 242 Cal.App.4th 1012, 1024.)

Defendant pleaded no contest to attempted first degree rape under Oregon Revised Statute section 161.405, subdivision (2)(b). Relevant here, the section defining first degree rape provided: "A person who has sexual intercourse with another person commits the crime of rape in the first degree if . . . [t]he victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness." (Or. Rev. Stat., former § 163.375, subd. (1)(d).) Attempt in Oregon is accomplished when "the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." (Or. Rev. Stat., § 161.405, subd. (1).)

California's rape statute covers sex with an individual who is unconscious or otherwise incapable of consenting. Under section 261, rape includes sex where (1) "a person is incapable . . . of giving legal consent, and this is known or reasonably should be known to the person committing the act"; (2) "a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused"; and (3) "a person is at the time unconscious of the nature of the act, and this is known to the accused." (§ 261, subd. (a)(1), (3) & (4).) Attempt in California is accomplished with "a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Attempted rape is a serious felony in California. (§ 1192.7, subd. (c)(3) & (39).)

Comparing the elements of attempted rape between the two states, there is a material difference in the knowledge requirement. Under Oregon law, the state is not required to prove that defendant knew the victim was incapable of consenting to sexual intercourse because knowledge of the victim's incapacity to consent is not a material element of the offense. (*State v. Phelps* (1996) 141 Or.Ct.App. 555, 558 [920 P.2d 1098,

13

1100].)[3] Whereas in California, "rape of an intoxicated person requires both (1) intent to engage in sexual intercourse and (2) either actual knowledge of the intoxicated victim's incapacity or negligent belief the victim had the capacity to consent." (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1249.)

There is nothing in the record of defendant's Oregon conviction establishing his plea necessarily satisfies the California rape statute. Though a reasonable interpretation of the evidence presented by the prosecution could include defendant's knowledge of the victim's incapacitated state, a guilty plea admits all elements of the charged offense, "but no more." (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1206.) Since defendant did not admit or stipulate to the fact that he knew of the victim's incapacitated state in the 2010 attempted rape conviction, the trial court could not make such a finding without violating defendant's jury trial rights. We find that the plea agreement, standing alone, is insufficient to establish that defendant knew or should have known the incapacitated state of the victim, satisfying section 261, subdivision (a)(1), (3) or (4).

We will reverse and remand the matter for a possible retrial on the prior strike allegation, which is not barred by double jeopardy principles. (*People v. Gallardo* (2017) 4 Cal.5th 120, 138; *People v. Barragan* (2004) 32 Cal.4th 236, 241-242.)

III

*Fines and Fees*

Relying on *Dueñas, supra*, 30 Cal.App.5th 1157, and its underlying authority, defendant challenges the $10,000 restitution fine, $40 court operations assessment, and

---

**3** Oregon defendants can assert as an affirmative defense to first degree rape a lack of knowledge of the victim's incapacity. (*State v. Simonov* (2016) 358 Or. 531, 538-539 [368 P.3d 11, 15, fn. 3].) But this does not indicate a legislative intent to "require the state to prove that defendant acted with a culpable mental state with regard to whether the victim lacked the mental capacity to consent." (*State v. Phelps, supra*, 141 Or.Ct.App. at p. 558 [920 P.2d at p. 1100].)

14

$30 criminal conviction assessment, arguing the trial court erred when it failed to hold a hearing to determine defendant's ability to pay. The People respond that the trial court did hold an ability to pay hearing and found an ability to pay, argue the restitution fine should be analyzed under the excessive fines clause of the Eighth Amendment to the United States Constitution, and assert that any error with respect to the other two assessments is harmless. Regardless of whether the trial court properly found an ability to pay, we are not persuaded that the analysis employed in *Dueñas* is correct.

*Dueñas* held that "although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.)

Later published authority has called the reasoning of *Dueñas* into question. As discussed in *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted November 26, 2019, S258946 (*Hicks*), *Dueñas* is premised on authority involving a due process right of access to the courts, and a bar against incarceration for an involuntary failure to pay fees or fines. (*Hicks, supra*, at p. 325.) A postconviction imposition of fees and fines, however, does not interfere in any respect with the right of access to either the trial or appellate court. (*Id*. at p. 326.) The postconviction imposition of fees and fines also does not result in any additional incarceration, and therefore a liberty interest that due process would protect is not present. (*Ibid*.) Since the stated bases for the conclusion in *Dueñas* do not support it, the question is whether due process generally otherwise compels the same result. (*Hicks*, at p. 327.) The People have a fundamental interest in punishing criminal conduct, as to which indigency is not a defense (otherwise, defendants with financial means would suffer discrimination). (*Ibid*.) "For the reasons set forth above, we conclude that due process does not speak to this issue and that *Dueñas* was wrong to

15

conclude otherwise.  [Citations.]"  (*Id.* at p. 329; see *People v. Kingston* (2019) 41 Cal.App.5th 272, 279 [accord].)

Our Supreme Court is now poised to resolve this issue, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court operations and court facilities assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4.  (*Kopp, supra*, at pp. 95-96, rev.gr.)

In the meantime, we join those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas*.  (*People v. Kingston, supra*, 41 Cal.App.5th at p. 279; *Hicks, supra*, 40 Cal.App.5th at p. 329, rev.gr.; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069 (*Aviles*); *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)  Having done so, we reject defendant's *Dueñas* challenge to the restitution fine.

To the extent defendant's challenge to the restitution fine is more properly assessed under the excessive fines clause of the United States Constitution, we likewise conclude the restitution fine is not excessive.

"The Eighth Amendment prohibits the imposition of excessive fines.  The word 'fine,' as used in that provision, has been interpreted to be ' "a payment to a sovereign as punishment for some offense." ' [Citation.]"  (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1040 (conc. opn. of Benke, J.).)  The determination of whether a fine is excessive for purposes of the Eighth Amendment is based on the factors set forth in *United States v. Bajakajian* (1998) 524 U.S. 321 [141 L.Ed.2d 314] (*Bajakajian*).  (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.)

16

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality:  The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.  [Citations.]" (*Bajakajian, supra*, 524 U.S. at p. 334.)  "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." (*Ibid*.)

The California Supreme Court has summarized the factors in *Bajakajian* to determine if a fine is excessive in violation of the Eighth Amendment:  "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay."  (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co., supra*, 37 Cal.4th at p. 728; see *People v. Gutierrez, supra*, 35 Cal.App.5th at pp. 1040-1041 (conc. opn. of Benke, J.).)  "While ability to pay may be part of the proportionality analysis, it is not the only factor. [Citation.]"  (*Aviles, supra*, 39 Cal.App.5th at p. 1070, citing *Bajakajian, supra*, 524 U.S. at pp. 337-338.)  We review the excessiveness of a fine challenged under the Eighth Amendment de novo.  (*Aviles*, at p. 1072.)

Here, the $10,000 restitution fine imposed in defendant's case was not grossly disproportionate to the level of harm and defendant's culpability in the offense. Defendant violently resisted arrest, bit Officer Gross, and tried to fire a loaded gun at him.  Officer Gross testified at sentencing to the dramatic impact this event has had on him and his family.  It was not grossly disproportionate to impose such a fine under these facts.  Accordingly, the $10,000 restitution fine imposed here is not excessive under the Eighth Amendment.

## DISPOSITION

Defendant's conviction for assault with a semiautomatic firearm on a peace officer (§ 245, subd. (d)(2)) is modified to reflect a conviction on count two for assault with a firearm on a peace officer (§ 245, subd. (d)(1)).  The case is remanded for full

17

resentencing. The finding that defendant's 2010 conviction in the State of Oregon for attempted first degree rape was a serious felony within the meaning of the three strikes law is reversed with directions to the trial court to dismiss the strike allegation for the 2010 conviction should the People decline to retry it before the resentencing hearing. At resentencing, the trial court is directed to select and impose full term sentences for any stayed counts. In all other respects, the judgment is affirmed.

                                                      _____KRAUSE_____, J.

We concur:

_____RAYE_____, P. J.

_____DUARTE_____, J.